LAMBIE and another, Plaintiffs, vs. VANDENBERG and another, Appellants: SPINDLER, Respondent.*

*November 19—December 23, 1947.*

* Motion for rehearing denied, without costs, on February 17, 1948.

For the appellants there were briefs by *Benton, Bosser, Becker, Parnell & Fulton* of Appleton, and oral argument by *David Fulton.*

For the respondent there was a brief by *Emmet Rohan* of Kaukauna, attorney, and *O'Melia & Kaye* of Rhinelander of counsel, and oral argument by *Mr. Rohan* and *Mr. A. J. O'Melia.*

FRITZ, J. The only question on this appeal is whether the amount of $2,500, assessed by the jury for Spindler's pain and suffering, and included on that account in his recovery under the judgment, is so excessive that the jury's assessment and the court's order for his recovery thereof cannot be sustained, and therefore constitute reversible error. In addition the judgment provided also for Spindler's recovery of $32 for loss of earnings, $190 for doctor and hospital bills and loss of clothing, and $2,500 for personal injury; but there is no appeal from the recovery in those respects.

Upon our review of the record it is our conclusion that under the evidence, including particularly the testimony of Dr. MacLaren and also Dr. Brown (who testified as expert witnesses called, respectively, by Spindler and the defendants), it was

within the province of the jury to believe and find that as the result of the manner in which Spindler was injured, by reason of causal negligence on the part of Vandenberg, Spindler has suffered such pain up to the date of the trial as to warrant the jury's assessment of $2,500 as the amount of his damages for that item.

At the time of the accident Spindler was sitting on the right side of the rear seat of the car with which defendant's car collided in a street intersection, while both were proceeding at about twenty-five miles per hour. The left front parts of the two cars came together, damaging both substantially. Spindler was thrown forward with such violence that the upper part of his body struck on, and his head snapped over the top of the front seat, and that he was then thrown back onto the rear seat and was in this position when the car came to rest. He did not strike his head, shoulder, neck, or any other part of his body except his chest, but immediately after the accident he felt a sharp pain in his neck, which lasted five or ten minutes. He alighted, however, from the car and assisted his copassenger Lambie who was cut and bleeding, and he stayed around the scene of the accident twenty-five or thirty minutes assisting Lambie and looking at the cars. Then Spindler caught a ride home and went to bed and spent a comfortable night, and the next day he got up and went to work as usual and continued to do so for five or six days after the accident. He testified:

During four or five days after the accident his neck did not feel the way it should, and one morning while washing his face, he got a terrible sharp pain in the back of his neck. It seemed like a kind of cloudy feeling as though he was going to fall over. He did not go to the doctor until two days after that, but during those two days he had a "terrible pain" in his neck. Several days later he went to Dr. Kremers, and saw him about fifteen times all told. The doctor did not take any X rays, but gave Spindler medicine to rub on his neck. He used it, but it gave him no relief, and the neck became worse. It was a continuous

pain all the time.    Later the doctor took one X ray which Dr. Kremers reported to Spindler was negative to fracture. Spindler continued Dr. Kremers' medicine, but as it was giving him no relief, he went to Dr. MacLaren, and continued with him since.    Dr. Brown, who examined him on May 20 and June 10, 1946, suggested to him that he wear a brace for a fracture of the vertebrae, and that this caused him to worry about his condition, and the pain in his neck was getting worse; and he was nervous all the time and he could not sleep, but kept on with his regular work in the ordinary way and did not see another doctor or have any further treatments until July 16, 1946, when he saw Dr. MacLaren.    Dr. MacLaren took six X rays and prescribed the use of a brace, which Spindler has been wearing continuously every day since, taking it off only at night when at home resting.    It holds his neck in a rigid position.    There is pain even when he wears the brace, and when he takes it off the pain is severe.    He has that pain continuously, but to support his family he had to keep on with his work, which consists only of walking around and reading meters, at which work he does not have to turn his neck.    He is able to turn his neck just a trifle, and to turn, he turns his body, and if he attempts to turn his neck it hurts more than usual.    His condition is getting worse than it was three months ago; and since he got hurt, he has not been able to do any bowling or hunting, and cannot even play cards for any length of time, nor is he able to take care of the lawn, the furnace, and general repairs around the home.

Dr. MacLaren testified:

It was his conclusion from his examination of Spindler and the four X rays taken by him that he sustained a fracture of the neck involving the fourth and fifth cervical segments, with a fracture of the pedicles, which are the small portions of bone extending above and below each vertebral segment, which makes a joint with the segment above and below; that between the fourth and fifth segments there was a fracture of the facets, which are the little prongs that protrude out on the vertebra by which they articulate.    The doctor would not think it would be the natural result of the fractures and the injury he found that Spindler had sustained that his condition should become

progressively worse; and while there may be some healing in the boney tissues, Spindler is going to suffer from this injury for the rest of his life, and the pain the doctor described comes from the fact that Spindler's nerves have been impinged upon, and it is not only by the fracture, but probably by the repair that it is now undergoing. He would say the pain would be a natural result of the condition he found. To a reasonable certainty, in his opinion there was permanent injury, and while there would be some healing, there would be some suffering for the rest of Spindler's life because the nerves were impinged upon, and the pain which he testified to would be a natural result of the condition Dr. MacLaren found. He saw Spindler on an average of every couple of weeks and no other treatment was suggested except the brace; and one would naturally expect that the immobilization of Spindler's neck would result in healing, but it is slow, and it is reasonable that if he attempts to move his body by turning his neck, he would suffer a pain that radiates out much farther than the normal pain that he suffers by the use of the brace, and which he suffers more or less continuously.

Dr. Brown testified:

On May 20 and June 10, 1946, he examined Spindler, and after careful X-ray studies concluded that there was no fracture but that Spindler had a congenital abnormality of the cervical spine, and the condition he found in Spindler's cervical region is of congenital origin, and there is no evidence in the films at all of trauma or injury to that portion of the spine or any fracture or fracture line or callus present or bone injury or pathology which is demonstrable by the X ray, and that he thought Spindler suffered an injury to his neck; that he had some muscle spasm when the doctor saw him, but Dr. Brown felt it was of such a grade and nature that it would be reasonably expected to be recovered from with ordinary conservative means; that if the injury occurred it was one that involved the soft tissues; muscles or tendons of the neck, which would heal in reasonable time; that it would be a little unusual for a man with a fractured neck to have just one immediate spasm of pain and then the disappearance of pain for a matter of five or six days, but it was perfectly possible for the accident he was in to produce an injury in the neck, and Dr. Brown did say in his

report that that congenital condition was superimposed upon by a trauma; and that he thought Spindler had some injury and recommended a brace as a possibility for the purpose of wearing it was to immobilize the neck in order that there might be a chance for some improvement in the dorsal spine; that he found some limitation of motion in the spine; that as to forward bending of the head, Dr. Brown said Spindler could only bend it to within two fingerbreadths of the sternum. The backward bending was limited, grade one, and his ability to turn his head to either right or left was limited, and upon whatever cogenital condition he may have had, which ordinary people might have, there was superimposed this trauma that brought about the condition he was in when Dr. Brown saw him; and that from the history Spindler gave him the spasm of the muscle of the neck would have been a natural result of the accident, but there is no reason to believe Spindler has other than a condition which would normally heal in the course of time; and whatever he received to the neck from this accident should, in the course of reasonable time, completely heal.

Drs. Mielke, Beatty, and McGrath (called by defendants) testified that on examining the X-ray pictures they found no evidence of fracture to any part of the cervical spine, and the condition found was a congenital anomaly.

Although there was thus considerable conflict under the evidence as to whether or not there was any bone injury or fracture, there was nevertheless sufficient evidence which could be considered credible by the jury and warranted it in believing and finding that there were the bone injuries testified to by Dr. MacLaren; and although there was some conflict between his testimony and that of Dr. Brown as to the precise nature and extent of the injuries sustained by Spindler and the length of time that he would have to wear the brace, these doctors were in agreement that he did sustain injury, and that whatever the injury was, or the extent of it, it was a painful condition, because of which there was advice given Spindler by each of these doctors as to his wearing the brace to enable him to go about his daily work of reading meters, which he was still wearing at the time of the trial. And likewise, the jury was warranted in

believing from Spindler's testimony that his pain was continuous and unbearable when he did not wear the brace; and that he had to keep his neck rigid and could not sleep, or enjoy the ordinary and usual activities and pleasures which he had theretofore indulged in.   Consequently, in determining the nature and extent of Spindler's pain and suffering caused by the accident, when there are duly considered all of the elements involved under the testimony, it is evident that the court did not err in sustaining the jury's assessment of $2,500 as the amount of his damages in that respect.   Moreover, in view of the facts that the jury's answers to the other questions in the special verdict in relation to plaintiff's damages for his loss of earnings, clothing, doctor, and hospital bills, and personal injury, were not considered perverse or otherwise questioned by defendants, and there evidently was neither passion nor prejudice on the part of the jurors and it was within their province under the evidence to assess the sum of $2,500 for pain and suffering, their verdict and consequently the judgment must be sustained.

*By the Court.*—Judgment affirmed.

The following memorandum was filed February 18, 1948:

FRITZ, J. (*on motion for rehearing*).   In defendants' brief in support of their motion for rehearing our attention is called to an error on my part, by reason of the clause "and probably will continue for some time to suffer," in the following portion of the second paragraph on page 2 of the typewritten opinion (filed December 23, 1947), to wit:

"Spindler has suffered and probably will continue for some time to suffer such pain as to warrant the jury's assessment of $2,500 as the amount of his damages for that item."

In lieu thereof, that portion of the opinion should have read, and will be amended to read:

"Spindler has suffered such pain up to the date of the trial as to warrant the jury's assessment of $2,500 as the amount of his damages for that item."

*By the Court.*—The motion for rehearing is denied; but without costs under the circumstances.