Buschman and another, Respondents, vs. Olson and another, Appellants.

*November 19—December 23, 1947.*

638

For the appellants there was a brief by *Langer & Cross* of Baraboo, and oral argument by *Clyde C. Cross* and *H. M. Langer*.

For the respondents there was a brief by *Stephens, Cannon & Cooper,* and oral argument by *Frank M. Coyne,* all of Madison.

FAIRCHILD, J. It is contended that there was prejudicial error in the admission of certain testimony relative to Mrs. Naffziger's injuries and that the damages awarded to each plaintiff were excessive.

On February 14, 1947, three months after the accident, Mrs. Naffziger returned to Madison for an examination by Dr. Gallagher, who is a specialist in orthopedic surgery and surgery to the muscles and spine. She had been under Dr. Gallagher's care for the week she had been hospitalized in Madison. At the time of the February consultation she complained of pain at the base of her neck and in her back. Because the symptoms were rather severe, Dr. Gallagher requested that she be examined by Dr. Bryan, a neurologist at the same hospital.

At the trial Dr. Bryan was not a witness but Dr. Gallagher was, and objection was made to Dr. Gallagher's telling what Dr. Bryan's examination of Mrs. Naffziger had revealed. Dr. Bryan's examination was under the direction of Dr. Gallagher and for the latter's purposes. Dr. Bryan's findings were entered in Dr. Gallagher's clinical record, and it was those findings and no other opinion of Dr. Bryan's which was referred to by Dr. Gallagher in his testimony at the trial. Even if under other circumstances the introduction by one doctor of another's findings might be reversible error, there is no need to further consider the matter in this case, for there was no prejudicial error in having Dr. Bryan's findings before the jury. His findings were to the effect that Mrs. Naffziger was

still tender about the sacrum and exhibited tenderness on pressure at the base of the skull and that her ankle and knee jerks were hyperactive. It is not intimated or suggested that the findings were in any respect erroneous. There is no resulting advantage or disadvantage to either side, for substantially similar testimony was given at the trial by Dr. Vandercamp, who at the request of the appellants had examined respondents on April 3, 1947, five months after the accident. Referring to Mrs. Naffziger, Dr. Vandercamp testified: "I tried to move her neck from one side to the other and bent it forward and straightened it. There seemed to be some limitation of motion as though that movement did pain her. I examined her back between her shoulders. As I pressed there she said that that hurt. . . . And she also described somewhat of a tender spot over her lower part of her back."

It can also be said of the other evidence to which appellants object that it appears to have been in no way prejudicial. That was the testimony of Mrs. Naffziger when she was questioned as follows:

"*Q.* Have you been informed that certain of your injuries are liable to be permanent? *A.* Yes.

"*Q.* Who informed you of that? . . . [Objections overruled.] *A.* My doctor in Dixon stated he could not tell at that time."

In view of other evidence which was put before the jury and will be referred to below, it is evident this testimony could not have been prejudicial.

The more serious question is whether or not the awards to the plaintiffs were excessive. We will consider Mrs. Naffziger's award for personal injuries first. Dr. Gallagher's testimony gives the following information: Very frequently patients who have had severe jarring injuries complain of aches and pains along the spinal cord and in the head. In severe cases there is accompanying paralysis. All those symptoms are typical of cord and cerebral concussion, but gradually

clear up. The patient's condition cannot be determined by X rays but can be determined only in the light of experience. There are many accident cases which have these same symptoms at the start. The normal course of events is for them to clear up in a month or two. Some patients respond promptly, in others the symptoms and the treatment are carried over a long period of time. In Mrs. Naffziger's case she had full function of her extremities when she entered the hospital, but all motion was painful. The symptoms which she complained about when she returned to the Madison hospital in February were all subjective symptoms but of the sort which fit in with a concussion syndrome. There was no indication of nerve damage of a permanent grade. Of her case Dr. Gallagher said : "All I can say is when I saw her originally and took care of her originally, she did have the definite signs and symptoms. As far as her future care, frankly, I am unable to state what the prognosis actually will be in this particular case. . . . I am not an authority to determine how long that will last, . . . or exactly how much of that is directly attributable to the accident."

Dr. Vandercamp testified that it is hard to find any definite signs of concussion ; that the findings which he made on examining Mrs. Naffziger five months after the accident were the sort that could very well be from the accident ; that the limitation in movement would soon disappear ; that there was no way of determining how long the pain, which is a subjective thing, would last ; that there is no reasonable basis for anticipating future hospitalization or substantial pain and suffering in the future.

Mrs. Gaul testified that during the two months when she cared for Mrs. Naffziger the latter screamed with pain when she made certain movements. Mrs. Gaul also had observed signs of Mrs. Naffziger's pain a few weeks before the trial.

It appears to us that from this evidence and Mrs. Naffziger's own testimony, the jury was entitled to believe that Mrs. Naffziger did in fact suffer great pain which continued to a degree

at the time of the trial, that her pain was the result of the accident, and that her damages therefore could be assessed at $3,000.

Two cases reported herewith are somewhat similar to the case at bar. In *Wenneman v. Royal Indemnity Co., ante,* p. 630, 30 N. W. (2d) 250, the court says:

"Our review of the record compels the conclusion that the evidence does not admit of the jury's award of $3,000 as damages for plaintiff's pain and suffering caused by the accident. An award of that amount would have been warranted only if there had been sufficient evidence, otherwise than unsupported subjective statements of plaintiff. . . ."

In this case the subjective statements of the plaintiff are not unsupported, and there is sufficient evidence to warrant the jury's award. In that respect it is similar to the other case reported herewith, *Lambie v. Vandenberg, ante,* p. 624, 30 N. W. (2d) 247, where a jury award of $2,500 for pain and suffering is upheld because there was sufficient credible evidence, though it was conflicting, to warrant the jury's believing the plaintiff had sustained a bone injury which created a painful condition.

As to the award of $500 to Miss Buschman for her pain and suffering, there appears to be no reason to overrule the jury's verdict. At the time of the accident the evidence shows Miss Buschman had considerable pain from the bruise on her forehead, which left a scar for some months afterward, and from the cuts on her leg, which were severe enough to cause her to limp temporarily. There was evidence to show that she had headaches often during the months between the accident and the trial and that her legs occasionally pained her.

Objection is also made to the amounts awarded each of the women for loss of wages. While the evidence may be subject to the criticism of being rather general and not specific, there is evidence to support those awards. It is considered under the circumstances present that it cannot be said that the

amounts assessed show bias or prejudice on the part of the jury. The exact number of workdays lost by Miss Buschman does not appear in the record. References are made to the "week or so" when she was actually away from the job. She earned a daily wage of $7.50. On that basis the award of $50 was warranted.

Mrs. Naffziger did part-time practical nursing. She had no definite record of her earnings but estimated them to average about $15 per week. She had not yet been able to resume work at the time of the trial in April, 1947. The jury did not award her the equivalent of $15 per week for the five and one-half months after the accident, but awarded her $250, which cannot be held to be excessive under these circumstances.

*By the Court.*—Judgment affirmed.