CZAPINSKI, Respondent, vs. THOMAS FURNACE COMPANY, Appellant.

*October 29—November 17, 1914.*

*Master and servant: Injury: Concurring negligence of master and fellow-servant: Unsafe appliance: Direction as to use: Warning of danger: Evidence: Competency: Instructions to jury: Burden of proof: Harmless errors.*

1. When an injury is caused by the concurrent negligence of the master in discharging or in failing to discharge a nondelegable duty which he owes to the servant, and by the negligence of a fellow-servant, the master is liable.

2. It is the duty of the master to furnish to the servant a reasonably safe appliance adapted to the nature of the work and the manner in which he requires it to be performed.

3. The fact that the master has instructed a servant in charge of an unsafe appliance to use it in a certain way and that if so used its defects could not cause an injury, does not justify the master in continuing the use of such appliance; and if through negligence of the servant in charge in failing to obey the in-

struction an injury results to another servant, such negligence only supplements that of the master and does not relieve him from liability.

4. A master who knows of danger to servants from an appliance operated as he requires it to be operated, owes to such servants the duty of warning and instruction concerning such danger if they do not know of it and it is not obvious or apparent to them.

5. After dumping its load, the clam clutch or grab of a traveling crane used in handling pig iron was returning, open and supposedly empty, for another load, when a piece of scrap iron which had stuck in the prongs of the grab fell upon and injured plaintiff. Defendant's president had occasionally seen pieces of iron fall in that way, and had instructed the crane man not to return the grab over the heads of those working on the floor. In an action for the injury the evidence is *held* to warrant findings by the jury that the grab was not a reasonably safe appliance, that defendant. ought to have warned plaintiff of the danger, which was not obvious, and that these breaches of duty on the part of the defendant proximately caused, either alone or concurrently with the negligence of the crane man, the injury to plaintiff.

6. The admission of certain testimony of doubtful competency which was almost immediately stricken out and the jury instructed to disregard it, was not a prejudicial error.

7. In an action for injury to an employee the admission of a statement by his daughter relative to the amount of his pay check after the injury was not a prejudicial error.

8. In an action for personal injury, the admission of testimony of plaintiff's attending physician with reference to statements made to him by plaintiff in order to enable him to prescribe for plaintiff, to the effect that plaintiff complained of dizziness and fatigue, was not a prejudicial error.

9. In an action for personal injury, after charging the jury as to the burden of proof upon other questions in the special verdict, the court said: "The question of damages does not have to have it stated where the burden of proof lies. In this case there is some damage." *Held*, that this statement and the refusal of a requested instruction as to the burden of proof on that question did not constitute prejudicial error, the court having elsewhere informed the jury fully on the question of damages and substantially as requested by defendant.

10. Refusal of an instruction as to the weight to be given to expert testimony is not error where that subject is sufficiently covered by the general charge as to all witnesses.

11. Refusal of an instruction having but a remote application to the facts in evidence is not prejudicial error.

Czapinski v. Thomas Furnace Co. 158 Wis. 635.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

Under a sufficient complaint, after hearing the evidence, instructions, and arguments, the jury by special verdict found as follows:

"(1) Was the grab used by said defendant on the day of said injury in connection with said crane a reasonably safe appliance in the manner and for the purpose for which the same was used? *A.* No.

"(2) If you answer the first question 'No,' then answer: Was said defendant negligent in failing to supply such reasonably safe appliance? *A.* Yes.

"(3) If you answer the second question 'Yes,' then answer: Was such failure of the defendant the proximate cause of plaintiff's injury? *A.* Yes.

"(4) Ought the defendant, in the exercise of ordinary care, to have warned the plaintiff that a piece of iron was likely to stick in the grab and fall therefrom while said grab was open? *A.* Yes.

"(5) If you answer the fourth question 'Yes,' then answer: Was such failure to warn a proximate cause of plaintiff's injury? *A.* Yes.

"(6) Ought an employee of the defendant other than the plaintiff, in the exercise of ordinary care, to have seen that the piece of scrap which fell upon the plaintiff was attached to the grab and to have caused its removal from the grab? *A.* Yes.

"(7) If you answer the sixth question 'Yes,' then answer: Was such failure to see and cause the removal of said piece of scrap from said grab a proximate cause of the plaintiff's injury? *A.* Yes.

"(8) Ought the plaintiff, in the exercise of ordinary care, to have seen the piece of scrap iron which hung in the grab in time to have avoided the injury? *A.* No.

"(9) If you answer the eighth question 'Yes,' then answer: Was the failure of the plaintiff to exercise such care a proximate contributing cause of his injury? *A.* ——.

"(10) Was the fact that a piece of iron might fall from the grab while open obvious to a person of full age, ordinary intelligence, and with the plaintiff's experience? *A.* No.

"(11) Was the plaintiff guilty of any want of ordinary

care on his part which proximately contributed to his injury?
*A.* No.

"(12) Did the defendant fail to exercise ordinary care
in the operation of said crane?    *A.* Yes.

"(13) If you answer question No. 12 'Yes,' then answer:
Was such failure to exercise ordinary care a proximate cause
of the injury to the plaintiff?    *A.* Yes.

"(14) Was the plaintiff at the time he was injured en-
gaged in the line of his employment?    *A.* Yes.

"(15) What sum will reasonably compensate the plaintiff
for the injuries he received?    *A.* ($2,020) Two thousand
and twenty dollars."

Appellant assigns error going to (1) the insufficiency of
the evidence to support the verdict; (2) erroneous admission
of evidence; (3) an erroneous instruction to the jury; (4) re-
fusal of requested instructions.

For the appellant there was a brief by *Doe, Ballhorn &*
*Wilkie,* and oral argument by *J. B. Doe* and *H. M. Wilkie.*

For the respondent there was a brief by *Roethke & Affeldt,*
attorneys, and *Christian Doerfler,* of counsel, and oral argu-
ment by *Mr. Doerfler* and *Mr. G. F. Affeldt.*

TIMLIN, J.    An inspection of the verdict discloses that the
first three questions assert a negligent failure of duty on the
part of the defendant which caused plaintiff's injury.    This
consisted in the failure to furnish a reasonably safe appli-
ance.    The fourth, fifth, and tenth questions, if taken to-
gether with the undisputed evidence that the plaintiff was not
warned or instructed and that the president of the defendant,
in actual personal charge of its manufacturing operations,
knew and the plaintiff did not know that pieces of iron oc-
casionally dropped from the open returning grab of the crane,
assert a separate negligent breach of duty due from the de-
fendant to the plaintiff which caused plaintiff's injury.    The
sixth, seventh, twelfth, and thirteenth questions, taken in con-
nection with the undisputed evidence, establish that the neg-

ligence there found was a cause of plaintiff's injury, but also was the negligence of a fellow-servant of the plaintiff, for which the defendant at the time of this accident was not liable. The verdict, negativing plaintiff's contributory negligence, therefore finds three grounds of defendant's negligence; that is, (1) failure to furnish a reasonably safe appliance; (2) failure to warn or instruct the plaintiff of dangers not obvious or apparent but known to the defendant and not known to the plaintiff; and (3) negligence in failing to empty the grab at the place of unloading and in other aspects of operation, which duties, the uncontroverted evidence shows, were in charge of and to be performed by a fellow-servant of the plaintiff. Hence, if there is evidence to support either the first or second above mentioned group of findings, the verdict cannot be disturbed on the ground of insufficiency of evidence. It is very familiar law that when an injury is caused by the concurrent negligence of the master in discharging or in failing to discharge a nondelegable duty which he owes to the servant and by the negligence of a fellow-servant, the master is liable. *Smith v. Winnebago R. Co.* 153 Wis. 469, 474, 140 N. W. 327, and cases cited.

It might be sufficient to say we find evidence to support the verdict, but the great earnestness and confidence of counsel for the appellant in asserting the total lack of such evidence prompts us to point it out, although by so doing this opinion is unnecessarily extended. What the evidence *tends* to show by express assertion or logical and lawful inference, that the evidence *does* show when followed by a verdict which requires for its support the consideration of such evidence or the drawing of such inferences. So we may say it appeared that the plaintiff was employed by the defendant and engaged in breaking and placing in position to be scooped up by the clam clutch or grab of a traveling crane long pieces of iron called "sows" which were formed in the operation of making pig iron. These "sows" consisted of the partially cooled or

hardened connections of what had been a stream of molten iron running from a larger reservoir to the molds in which the pigs were formed. This work required great activity and continued attention on the part of the plaintiff so as to have the load ready for the crane, which returned for a load every three minutes. About twenty feet over the ground sand floor on which plaintiff worked was an electric traveling crane having on its lower side a carriage for the crane operator, and beside and partially below this a clutch clam or grab something like the ordinary clam-shell buckets used for unloading coal, but constructed with prongs at the lips or open lower mouth and with sides made of open iron work. This is called in the verdict the grab and we shall call it by that name. The grab was about four feet across and had a grasp or spread of seven feet when open. The carriage carrying this grab had two motions, one in the direction of the extension of the building in which it was and one across this extension or at right angles to it, and if these two motions could be carried on at the same time it necessarily had with reference to the sand floor a third or diagonal motion. The suspended grab was used for picking up from the sand beds on the floor the pigs of iron and the broken pieces of sow mentioned and transporting them to another somewhat distant part of the same room. The grab was in its regular and authorized operation always brought back open from the place of dumping to the iron prepared and placed by plaintiff and allowed to descend upon that iron, then closed so as to grasp as many as possible of the pieces of iron, then hoisted to a height of about twenty feet, then carried by the crane to the dumping place and dumped by opening the jaws of the grab, and then returned by the crane at about the same height over the floor, open, to again descend upon, close, and grab another load made ready by the plaintiff.

There was no negligence of any fellow-servant of the plaintiff in bringing back the grab open, because that was the way

in which the defendant authorized and required the crane to be operated.   Mr. Thomas .was president of the defendant corporation and in personal and active charge of its manufacturing operation, and consequently represented the defendant for all purposes in all of the duties which by law the defendant owed to the plaintiff.   Mr. Thomas had devised this crane and grab and had during five or six years preceding the injury occasionally seen pieces of iron fall from the grab while it was being brought back open.   He saw this three or four times, possibly a dozen times, probably seven or eight times, before the accident.   Usually these falling pieces were smaller or undersized pigs which would be able to lodge in the prongs of the grab, and this could not be prevented by any design if the apparatus in question were used.   The grab was made with prongs instead of lips so that the sand would not be taken up with the pigs, and when the grab is closed the prongs lap a little.   These prongs are about three or four inches apart and each opening between them is twelve or fifteen inches long, and these openings are found in each of the jaws of the grab.   The grab was required to be brought back open in order to save time or energy in closing it after it dumped and opening it again when about to descend upon the pig iron.   Mr. Thomas, conscious of the danger to those working on the sand floor, had given instructions to his foreman that the grab should not be run over the heads of men working on this floor upon its return for a load, and this was generally practiced.   The plaintiff did not know of this occasional carrying back after dumping and dropping on the way back of a piece of iron by the grab, and he was not informed of it or instructed concerning the danger of passing under or working under the grab when it was returning presumably empty.   The injury in question was caused by the crane man either bringing back the open grab over where the plaintiff was working on the sand floor, or by the plaintiff in carrying on his work on the sand floor stepping into a place

where the grab was suspended over his head and at the same time a piece of iron weighing twenty or twenty-five pounds which the grab had carried back from its dumping place falling from the grab onto the plaintiff.    From this it clearly appears that the grab was of defective construction for handling the material to be handled in the manner in which the defendant required it to be handled.    The duty of the master to the servant requires the former to furnish a reasonably safe appliance adapted to the nature of the work and the manner in which he requires it to be performed.    *Smith v. C., M. & St. P. R. Co.* 42 Wis. 520, 526; 1 Labatt, Mast. & Serv. § 22, pp. 44, 47; *Greenberg v. Whitcomb L. Co.* 90 Wis. 225, 63 N. W. 93, 28 L. R. A. 439.

Had the grab been closed on its return, or had it been thoroughly emptied by the dumping process of opening the jaws, or had it been of such construction as not to hold and carry back part of its load, different questions might arise.    But upon the foregoing there was ample room to find that the grab, operated in the way the defendant required it to be operated, was an unsafe appliance.    There is also in this testimony a substantial basis for the finding that the defendant, knowing of this danger, owed the plaintiff, who did not know of it, the duty of warning and instruction concerning it, and that the danger was not obvious or apparent to the plaintiff (*Strahlendorf v. Rosenthal,* 30 Wis. 674); also that these breaches of duty on the part of the defendant proximately caused, either alone or concurrently with the negligence of a fellow-servant, the injuries complained of.    Either the failure to furnish a reasonably safe appliance or the failure to warn would under such circumstances support the recovery. The case is argued as if the master performed his duty when he instructed the crane man not to return the crane over the heads of those working below on the sand floor.    This indicates some misconception of the law of master and servant. The effect of this instruction was not to authorize the master to use a defective appliance or to justify him in continuing

its use by charging another servant to use it carefully.    The
duty to furnish reasonably safe appliances cannot be thus
evaded.    This instruction to the crane man made it the duty
of the crane man to obey and his failure to obey was negli-
gence of the crane man.    But the nondelegable duty of the
master to furnish reasonably safe appliances persisted not-
withstanding these instructions to the crane man, and if the
latter became delinquent his negligence only supplemented
that of the master in causing the injury.    In other words, a
master is not privileged to use an unsafe appliance because he
instructs a servant in charge to so use it that its defects can-
not injure if the master's instructions are followed.    As was
said by this court in *Herring v. E. I. Du Pont de Nemours
P. Co.* 139 Wis. 412, 416, 121 N. W. 170: "If, however, the
defects were effective only in conjunction with the negligence
of a fellow-servant, the defendant's responsibility is no less
certain."    See, also, *Sherman v. Menominee River L. Co.* 72
Wis. 122, 39 N. W. 365.

With reference to the errors assigned in ruling on evidence,
the first concerns some testimony of doubtful competency ad-
mitted by the court but almost immediately stricken out and
the jury instructed to disregard it; the second relates to a
statement by plaintiff's daughter relative to the amount of his
pay check after the injury.    There was a motion to strike
this out, but no ruling on such motion is found in the printed
case.    The third relates to testimony of plaintiff's attending
physician with reference to statements made to this physician
by plaintiff in order to enable the physician to prescribe for
him.    It was to the effect that plaintiff complained of dizzi-
ness and fatigue.    This assignment of error seems to us quite
trifling.    There was no prejudicial error in these rulings.

Having informed the jury relative to the burden of proof
on other questions of the special verdict, when he reached the
question of damages the trial court said to the jury: "The
question of damages does not have to have it stated where the
burden of proof lies.    In this case there is some damage."

This is not correct, because although there was certainly some damage the *onus* rested upon the plaintiff to prove the amount and extent of his damages. But we cannot think it prejudicial. The court elsewhere in its instructions informed the jury quite fully on the question of damages, among other things that they could not, in fixing the amount, award anything for compensation except such as follows directly from the injury received by the fall of the iron. Said the court: "For instance, if there were other causes, other conditions have been made to appear in this case which caused in part the condition of the defendant, or in whole, the permanency of the injury, if there is a permanent injury there, gentlemen of the jury, then those cannot be considered in estimating the damages in this case." This is the substantial equivalent of defendant's request for instructions on this point. The amount of damages awarded carries no indication of error on the part of the jury in this respect.

Two additional requests for instructions were refused, first relating to the weight to be given to expert testimony, which we think was sufficiently covered by the general charge relative to all witnesses; the second with reference to the right of the defendant to assume that the plaintiff was a man of ordinary intelligence and possessed the usual faculties and would exercise such care to avoid dangers which were visible as men of that kind ordinarily would. This had but a remote application to the facts in evidence and we cannot think its refusal was prejudicial. The danger of the grab carrying back a part of its load and dropping it on the way was not obvious from an inspection of the grab and crane, and the plaintiff was not at such leisure nor in such position as to have opportunity for observing such occasional happenings, and there is express testimony to the effect that he did not observe it and that the defendant did. It follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.