Wenneman, Respondent, vs. Royal Indemnity Company, Appellant.

*November 19—December 23, 1947.*

For the appellant there were briefs by *Benton, Bosser, Becker, Parnell & Fulton* of Appleton, and oral argument by *David Fulton.*

*Walter Melchior* of Appleton, for the respondent.

FRITZ, J.    On this appeal defendant contends the court erred in sustaining the jury's assessment of $3,000 as the amount of the plaintiff's damages for his past, present, and future pain and suffering as the result of injuries caused on June 20, 1946, by Eugene Bislex's negligent operation of an automobile which collided with plaintiff's automobile.    He was duly waiting at an intersection for the change of a stop light when Bislex's automobile struck the rear of his automobile so violently as to suddenly knock it ahead for ninety feet with such force that it was badly demolished, and the front seat thereof was torn loose and plaintiff was thrown backward against the rear seat and then forward and knocked unconscious for about fifteen minutes, and finally fell out of the left front door, landing on his feet.    He was hit on the back of the neck, and his back and the side of his head and his legs were badly bruised.    He remained at the scene of the accident talking to Bislex and attending to the accident for approximately half an hour, and was then taken to the police station by the officers.    While remaining there about fifteen minutes he phoned his doctor, Dr. Swanton, who arranged to see him at his office the next morning at 11 o'clock.    Then plaintiff there received first-aid treatment for the abrasions and contusions to his legs.

Plaintiff testified that for five months later he had pain in his neck, ears, and spine; that he had a dull pain in the neck bone above the shoulder, which he claims is constant, and also

had pain in the lower part of the back; and that he suffered a loss of hearing and bled from an ear the second day after the accident, and about three times afterward, and his hearing was affected immediately after the accident and continued at the time of the trial, and he complains of a dull ache in his ear, which is constant, and a loss of hearing in both ears. Dr. Swanton testified he saw plaintiff seven times, the last being on September 6, 1946, and the only complaints made to him were of the abrasions and bruising of the legs and a so-called snap strain of the neck muscles. Dr. Swanton had X rays taken which showed no evidence of any injury. On direct examination Dr. Swanton was asked, "There was no complaint about the ears," and he answered, "No." But on cross-examination of Dr. Swanton by plaintiff's attorney, he testified:

"*Q.* Doctor, in your treatment of Mr. Wenneman did you have occasion to make any treatment up around the ear? *A.* Yes.

"*Q.* What was that? *A.* Sternocleidomastoid muscle.

. . .

"*Q.* That treatment which you gave him was up in this area? *A.* Little lower. In here. Here is the neck muscle.

"*Q.* Put any——? *A.* Heat and rubbing.

"*Q.* That was in this area here? *A.* Yes.

"*Q.* Right here? *A.* On this muscle and neck muscle.

"*Q.* That is right in the immediate area of the ear, isn't it? *A.* Back of the ear, yes."

[On redirect examination.]

"*Q.* In your examination of Wenneman, was there any evidence to indicate at all there was any injury to the ear? *A.* No complaint of the ear. I did not examine the ear—ear drum I am speaking of."

However, Dr. Swanton did send him to Dr. Quade, a neurologist, for examination in September and October, 1946. He testified as a witness called by defendant that he examined the X rays and found no evidence of any injury to the spine or

vertebra in either the region of the neck or in the region of the lower back. The cervical views revealed normal cervical spine without evidence of changes due to trauma, or disease. On the lumbar spine views there were hypertrophic changes. Those are arthritic changes. The lumbar spine revealed hypertrophic changes as to the lumbosacral disc space with hypertrophic lippings of the anterior borders of the fifth lumbar vertebra. There was no evidence of trauma in the lumbosacral region. The sacroiliac joint appeared normal. There was no X-ray evidence of injury to the lumbar spine. There are no objective residuals neurologically on X ray. Residuals mean there were no findings that he could detect on his clinical examinations of damages to the nerves or nerve structure or spinal cord or the brain. On October 8th plaintiff complained of pain in the region of the neck and upper spine, but there was no objective evidence to substantiate that, Dr. Quade testified, and he found the nervous system normal, and from his examination found nothing wrong. He diagnosed plaintiff's condition as a strain or snapped-neck injury and concluded that he had made a satisfactory recovery. He also anticipated full symptomatic relief, that is relief from subjective complaints, within the then near future.

On November 7, 1946, plaintiff went to Dr. Marshall for an examination, and he testified he made diagnoses of a sprain of the sixth and seventh cervical and first dorsal vertebrae, sprain of the lumbosacral vertebra and disturbed equilibrium of the nervous system, all of which he attributed to the accident; that there was no limitation of motion or other evidence of injury to the spinal system and no objective evidence of injury at all, except some rigidity of the muscle in the neck. Dr. Marshall also testified to evidence of impaired hearing, and that he directed plaintiff to Dr. Rector, an ear specialist, whose examination he supervised; and that several additional months will be required before the residuals of the injury will

be permanently improved, with a possibility that complete recovery may not occur. On the other hand, Dr. Mielke, who examined plaintiff at defendant's request in December, 1946, testified he found no evidence of injury; that plaintiff conducted himself around the doctor's office with no apparent discomfort; that although he complained of pain over the neck area and in the shoulders, there were no definite areas of tenderness or soreness to indicate an injury; and there was no rigidity in any of the motions of the neck and all of the complaints were entirely subjective.

Prior to and also since the accident, plaintiff, who is forty-seven years of age, worked as a bus driver, and he also heads a small orchestra which plays two or three evening engagements a week. Following the accident he was off work as a bus driver for about twenty days. Then he took a week's vacation with pay, and returned to his regular employment and performed his usual and ordinary work in the usual and ordinary way. His pay was increased and he worked longer hours. He also continued to follow his orchestra work, playing two and sometimes three nights a week as before.

Our review of the record compels the conclusion that the evidence does not admit of the jury's award of $3,000 as damages for plaintiff's pain and suffering caused by the accident. An award of that amount would have been warranted only if there had been sufficient evidence,—otherwise than unsupported subjective statements of plaintiff,—to admit of the jury finding that, because of injuries sustained as the result of the accident,—including his claimed impairment of hearing, if established by competent evidence,—he will probably continue to have such pain and suffering for such period beyond the date of the trial as to entitle him to recover some such substantial amount as damages therefor. In the absence of sufficient competent proof in that respect, the award in question cannot be sustained, and any attempt by the court to assess the proper amount would be dependent largely upon mere con-

jecture. Consequently, in furtherance of justice there must be a new trial on solely the issue as to a proper award for plaintiff's pain and suffering, based upon such competent evidence as the parties may be entitled to introduce.

*By the Court.*—Judgment reversed and cause remanded for a new trial in accordance with the opinion.