Karsten, Appellant, vs. Meis and another, Respondents.*

*February 4—March 3, 1953.*

* Motion for rehearing denied, with $25 costs, on May 5, 1953.

For the appellant there was a brief and oral argument by *J. E. O'Brien* of Fond du Lac.

For the respondents there was a brief by *John J. Schneider,* attorney, and *Ervin A. Weinke* of counsel, both of Fond du Lac, and oral argument by *Mr. Schneider.*

MARTIN, J.   The trial court granted a new trial in the interests of justice for the reason that the damages assessed by the jury were excessive.   The question presented is whether it was error to reduce the damages assessed by the jury to the lowest amount a properly instructed jury would award or grant a new trial upon appellant's failure to accept the reduced amount.

We have examined the record carefully and the evidence respecting appellant's pain and suffering and disability is as follows: Upon appellant's admission to the hospital it was found that he had a brain concussion, cuts of the hands and arms, contusion and sprain of both wrists, abrasion of both ankles, and a broken tooth.   During the six days he was hospitalized the treatment by Dr. Devine consisted mainly of sedatives administered to give him rest and relief from pain.

The doctor testified that appellant exhibited no symptoms of brain injury; that X rays taken at the hospital indicated he had a fractured sternum and a small chip of bone in the left wrist that was reported by the roentgenologist as an old fracture. It was also the doctor's opinion that the bone fragment was the result of an old injury, and that none of the injuries he found were of such a nature as would probably result in permanent residuals.

The bone fragment was described by Dr. John Connell, who examined the X rays, as about ⅛″ x ⅛″ in size and having a smooth surface. It was his opinion that the smooth contour of the chip indicated it had existed for some time prior to the date of the accident. The X rays showed the wrist to be normal except for the small chip. Dr. Connell also examined X rays taken August 8, 1950, which indicated that the detached piece of bone had remained stationary, and it was his opinion that it would remain so. The X rays taken at the hospital showed separation between the upper and middle segments of the breast bone; no X rays were taken of the sternum after that.

After appellant's discharge from the hospital he consulted his own physician, Dr. Leland Frederick of Brownsville, and complained of pain in his chest and both wrists. Further X rays were taken and a cast was applied to the left wrist; the chest and right wrist were taped. The cast was removed after about a month. Dr. Frederick testified that in his opinion the smooth contour of the bone fragment did not necessarily mean that the separation was of long standing; that, in fact, on one of the X rays it appeared "definitely sharp;" the fact that the chip was separated from the parent bone by a distance of approximately one-half inch did not necessarily mean that the separation took place some time ago.

In the opinion of Dr. S. E. Gavin, who examined appellant about two years after the accident, the bone chip came from an injury suffered previous to the accident; but even if it

had resulted from the injury of October 6, 1948, the doctor did not believe it could cause symptoms of pain. He found no objective reason for pain or disability, either in the wrist or in the chest.

The injury to the left wrist was contested strongly, and nowhere do we find any positive testimony that the fracture or chipped bone was caused by the accident. Drs. Connell and Devine testified to a reasonable certainty that the bone fragment and separation were caused by a prior injury, while Dr. Frederick, whose testimony was not positive, was inclined to think it could have been caused by the accident here involved. However, it is to be noted that Dr. Frederick was not asked whether or not he believed that the bone chip was caused by the accident.

The evidence established that at the time of trial there had been a complete recovery from all the injuries suffered in the accident. Aside from the pain which appellant suffered during his hospitalization, there is no evidence of pain except in his own testimony, and the doctors could not account for it on the basis of their objective findings. The fracture of the wrist was in issue, and it was this injury that was stressed most by appellant in his claim for damages. It was incumbent upon him to establish this injury, by proper evidence, as arising from the accident of October 6, 1948; and there is no testimony that, to a reasonable certainty, it was caused by the accident. Upon the evidence in the record, such a conclusion would be pure speculation.

In *Landrath v. Allstate Ins. Co.* (1951), 259 Wis. 248, 48 N. W. (2d) 485, it was said (p. 257):

"In that case [*Wenneman v. Royal Indemnity Co.* (1947), 251 Wis. 630, 30 N. W. (2d) 250], upon a review of the record, the court was compelled to conclude that the evidence did not admit of the jury's award as damages for plaintiff's pain and suffering caused by an accident, and it was there ruled in effect that the award allowed could be warranted

only where sufficient evidence other than the unsupported subjective statements of plaintiff existed."

Appellant returned to his employment on December 8, 1948, and has worked ever since.

There is not sufficient competent evidence in the record to sustain the award, and a new trial is necessary on the question of damages.

On the question of respondent Meis' negligence, it should be noted that the only evidence is that skid marks extended approximately 25 feet from the rear of the car and approximately five feet in front of it. The record is otherwise devoid of evidence bearing upon Meis' speed, lookout, and management and control at any time prior to the accident. There was no evidence that he had been drinking, that he was tired or sleepy, or that anyone in the car had objected to the way in which he drove the car. Respondent offered no evidence at all.

In our opinion the factual situation here is the same as that presented in *Masanz v. Farmers Mut. Automobile Ins. Co.* (1949), 256 Wis. 222, 40 N. W. (2d) 391, where it was held that the skid marks indicating the driver was aware that the road ended but did not so correlate his speed and management as to avoid the accident, constituted sufficient evidence to support the jury's finding of negligence.

It was also said in that case that there was no assumption of risk since the skid marks were not of such length or character as to establish, as a matter of law, that plaintiff could have observed the danger and acted for his own protection. The fact that appellant here was sleeping prior to and at the time of the accident does not constitute contributory negligence, since there is nothing in the evidence to show that, even if he had been awake, he could have seen the truck and anticipated that Meis would not avoid striking it. See *Schmidt v. Leuthener* (1929), 199 Wis. 567, 227 N. W. 17; *Forbes v. Forbes* (1938), 226 Wis. 477, 277 N. W. 112.

We are of the opinion that the jury's findings with respect to negligence and assumption of risk are supported by the evidence, but that a new trial must be had on the question of damages.

*By the Court.*—Order affirmed. Cause remanded for a new trial on the question of damages only.

FAIRCHILD, J., took no part.