SMEE, Respondent, vs. CHECKER CAB COMPANY, Appellant.

*May 8—June 4, 1957.*

For the appellant there were briefs by *Kivett & Kasdorf,* attorneys, and *A. W. Kivett* of counsel, all of Milwaukee, and oral argument by *A. W. Kivett.*

For the respondent there was a brief and oral argument by *Horace P. O'Hara* and *Merle W. Hillis,* both of Milwaukee.

WINGERT, J.   Appellant contends that the jury's damage appraisals are excessive, unsupported by credible evidence, and based on conjecture and speculation.   We agree that such is the case with respect to the figures for medical and hospital expense and loss of wages, but consider that the award for pain and suffering may be sustained.

*Pain and suffering—$2,500.*   Viewing the testimony in the light most favorable to plaintiff, as we must, it makes a case substantially as follows:

The most-serious injury resulting from the accident was that to plaintiff's head.   There was a cut on the head which bled.   When plaintiff reached the doctor's office he was very upset, incoherent, and complained of "a lot of pain."   When examined at the hospital, he complained of severe pains in the head.   The injury was diagnosed as cerebral concussion due to an accident.   There was no fracture.   In the hospital, at plaintiff's request, an ice pack was kept on his head for two or three days.   Plaintiff had headaches from time to time ever since the accident.   With reference to the headaches plaintiff testified, "I don't get them continually but I get them every once in a while.   If it happens where I'd be working like that, I'd kind of have to stop; looks like the whole top of your head is coming off.   It comes and goes.   I'd have to stay home all the time if I had it like that all the time.   I couldn't work.   If it happens on the street, I have to go and stand in a doorway until it goes away from me."   He also testified that he did not have that feeling in his head prior to the accident, and that he has these headaches sometimes two or three times a week, and sometimes for a week or two he does not get them at all.   Dr. Foley testified that at the time of trial, more than four years after the accident, plaintiff still complained of headaches.   The doctor also testified that it is hard to tell how long a concussion will persist, and that concussion headaches are slower in going away in old people than in younger persons.

In the accident plaintiff also received cuts on both knees, a bruised elbow and wrist, and badly skinned buttocks of which he said, "It was just like fire, like the skin was all off." On his fourth day in the hospital he complained of some pain in his left wrist and left knee, according to the hospital records.

The evidence thus summarized does not make a strong case for $2,500 damages for pain and suffering, particularly since the evidence of frequently recurring and severe headaches over the four-year period since the accident consists wholly of plaintiff's subjective statements. Such statements are not entitled to great weight when unsupported by medical evidence. *Wenneman v. Royal Indemnity Co.* 251 Wis. 630, 634, 30 N. W. (2d) 250; *Karsten v. Meis,* 263 Wis. 307, 311, 57 N. W. (2d) 360. However, we think the jury could reasonably believe plaintiff's testimony, *Chitek v. Horn, 257* Wis. 9, 11, 42 N. W. (2d) 162. The medical testimony, while sketchy, established that plaintiff sustained a brain concussion, that concussions cause head pain, and that they may persist for some time. This testimony was entirely consistent with plaintiff's assertions; and coupled with plaintiff's testimony that he did not have "that feeling" in his head before the accident, could support an inference that the accident caused the subsequent headaches.

We have also been troubled by the thought that the jury may have failed to discriminate between pain and suffering resulting from the abdominal condition unrelated to the accident, and that caused by the injuries, as it apparently did in determining the special damage items mentioned below. However, all things considered, and giving much weight to the judgment of the learned trial judge who saw the witnesses and heard the evidence, we have concluded, though with hesitation, that the $2,500 award may stand. Awards of $2,200 and $3,000 for injuries apparently no greater were upheld in *Timm v. Rahn,* 265 Wis. 280, 61 N. W. (2d) 322.

*Medical and hospital expense—$275.* This finding cannot stand. The only evidence on medical expense was that Dr. Foley's total bill for services over the four-year period from date of accident to date of trial was $160, which included temporary examination after the accident, examination at the hospital with complete tests, calls at the hospital every day for two weeks, office calls every two or three weeks for six months after the accident, "I saw him for a whole year really," two office calls in 1953, and two calls shortly before the trial. There is no breakdown of the doctor's bill between treatment of injuries due to the accident, and services connected with the abdominal condition, obesity, and general checkups; but it is quite apparent from the doctor's testimony that his principal concern and effort at the hospital was the diagnosis and treatment of the abdominal condition. As to the brain concussion, which was the only serious injury, the doctor testified: "When you have a concussion you don't worry about him as long as you got him in bed."

The only evidence as to the amount of the hospital bill was plaintiff's testimony that "I think it was around $254 or something like that." We find no breakdown in the record, although the trial court stated in his opinion on motions after verdict that $182 was for room and $15 for head X ray. There is no evidence that plaintiff's injuries alone required hospitalization, or that he would not have been hospitalized for his abdominal condition in the absence of the accident, or that his stay in the hospital would have been shorter if he had not been injured, or that he would have had fewer visits there by the doctor, or would have made fewer calls at the doctor's office thereafter. He was kept in the hospital until his temperature, which was not attributed to the concussion, went down so that an operation in the abdomen could be avoided.

On this record the jury's allocation of $275 for hospital and medical expense due to the injuries resulting from the accident is pure conjecture.

*Loss of wages—$525.*  Plaintiff earned $75 per week and was away from work seven weeks. The jury attributed the entire $525 of lost wages to the accident.

There is no evidence that plaintiff could not have gone back to work sooner or that it would have hurt him to do so or that the doctor advised him not to do so. Dr. Foley testified when plaintiff was discharged from the hospital at the end of two weeks, "His condition was good." Indeed there is no evidence that his accidental injuries would have hospitalized him at all, or kept him from work more than a few days. It is not even claimed that his two-week trip to Hot Springs was occasioned by the injuries.

We must hold that the jury's finding that seven weeks' absence from work was attributable to the accident was wholly unsupported and cannot stand.

Plaintiff having failed to sustain his burden of proving how much medical and hospital expense and loss of wages, if any, was attributable to the· accident, *Czapinski v. Thomas Furnace Co.* 158 Wis. 635, 644, 149 N. W. 477, *Maslow Cooperage Corp. v. Weeks Pickle Co.* 270 Wis. 179, 191, 70 N. W. (2d) 577, the $800 awarded therefor by the jury must be eliminated from the judgment, except the $15 item for a head X ray.

*By the Court.*—The judgment is modified by deducting $785 and thereby reducing it to $2,658.40, and, as so modified, affirmed.