BOROWSKE, Respondent, v. INTEGRITY MUTUAL INSURANCE COMPANY and another, Appellants.

*April 4—April 30, 1963.*

For the appellants there was a brief by *Herrick & Sigl* of Eau Claire, and oral argument by *Kenneth L. Sigl.*

For the respondent there was a brief and oral argument by *Frank E. Huettner* of Cadott.

DIETERICH, J. The accident occurred at approximately 9:30 a. m., August 31, 1960, at the intersection of County Trunk MM and an unnamed town road, one mile east and one mile south of the village of Cadott, Wisconsin.

The testimony which bears on the relevant issues on this appeal is in substance as follows:

The witnesses agreed that the intersection was formed by two roads at right angles to each other, County Trunk MM running east and west, and the town road traveling north and south. Both roads were level and straight at and near this intersection. The town road was surfaced with gravel and somewhat rough to the south of the intersection except for those times when it had just been graded. County Trunk MM was surfaced with blacktop to the west of the intersection and with gravel to the east of the intersection. The blacktop portion was covered with sand and gravel from a point about 75 feet west of the intersection to the intersection itself. Since the time of the accident MM has been resurfaced so that it is now blacktop east, as well as west, of the intersection. The intersection was uncontrolled and no signs were present of any kind except one which faced west on MM and stated that the road was under construction and to drive carefully." All witnesses to the scene agreed further that a growth of willows and tag elders growing in the

southwest corner of the intersection completely obscured vision except for a small hole or channel through this growth running diagonally from about 300 feet to the west on MM to 300 feet to the south on the town road. The growth was somewhere between 10 and 15 feet high. There was some disagreement as to whether this growth extended to the shoulders of the roads or whether it stopped at the fence lines at some distance from the shoulders.

Borowske testified that he lived one mile south and one-quarter mile west of the intersection and that he traveled the town road three or four times each day. On the day the accident occurred he left his home at about 9 a. m., driving his 1956 Chevrolet, and approached the intersection from the south at a speed of about 25 miles per hour. As he approached MM he slowed to eight to 10 miles per hour as the road was very rough. His vision was obscured to the west because of the presence of the willows and tag elders growing to the southwest of the intersection. He did not see Hurth until he entered the intersection at which time Hurth was approaching some 250 feet away. Borowske attempted to accelerate across the intersection ahead of Hurth, but was struck in the left rear wheel of his car and spun around. The point of impact was at or near the center of the intersection. On cross-examination Borowske stated that he had not seen the Hurth vehicle until he had seen gravel fly and he, Borowske, was at or near the center line of MM.

After helping the traffic patrolman take measurements, Borowske went to the clinic in Cadott where he saw Dr. Haines. Borowske stated that he had injuries to both feet, the right kneecap, groin, chest, forearm, finger, neck, and head. He had been knocked unconscious for a minute or two from the collision. Dr. Haines bandaged his feet and knee and gave him crutches which he used for a month or more. He still has pain in his feet and right knee and wears

special arch supports in his shoes. He has continued to see Dr. Haines for treatment of these injuries.

Hurth testified that he lived one and one-eighth miles east of the intersection in question and drives through that intersection many times. He said that he was returning home in his 1953 Ford from Cadott with his three-year-old son on MM at a speed of about 40 miles per hour on the day of the accident. Some 250–275 feet before he reached the intersection he saw the Borowske car approaching from the south at a distance of approximately 300 feet, through an opening in the growth southwest of the intersection. He assumed that he had the right-of-way and that the other car would come to a stop and allow him to pass. He approached the intersection with his foot off the accelerator as there was sand and gravel ahead. He again saw the Borowske vehicle when it was about a car length and one half from the intersection and he was 50 to 75 feet away from the intersection. Hurth applied his brakes, grabbed his child, and turned the wheel to the right. His car skidded to the point where he hit Borowske. In Hurth's opinion Borowske was traveling faster than eight to 10 miles per hour.

James Revoir, the traffic officer who investigated the accident, found debris in the center of the intersection and skid marks from the west about 70 feet long. The weather was clear and the road was dry.

Dr. B. J. Haines testified that Borowske came to him for treatment on the day of the accident. Borowske had suffered a contusion and hematoma on the left foot, contusion on the right foot, contusion on his chest, abrasion of the right index finger, injury to the medial cartilage of the right knee, and a mild cerebral concussion. Dr. Haines taped both arches and put an elastic bandage around Borowske's right knee. Dr. Haines gave Borowske crutches and sent him home. The next day X rays were taken, no further injury was re-

vealed by them. It was Dr. Haines' opinion that Borowske has now fully recovered from all injuries received in the accident of August 31, 1960, except those to his left foot and right knee. The doctor stated that Borowske had traumatic bursitis of the right knee caused by a tear to the cartilage on the inner surface of the knee joint. Borowske was still under treatment and received shots which lessened the inflammation and pain in his knee and pain in his foot. Dr. Haines could not substantiate certain injuries to Borowske's groin as they were not brought to his attention until some months after the accident occurred.

Dr. Thomas E. Kilkenny, an orthopedic surgeon, testified for the defense. He gave Borowske a thorough examination July 2, 1962, and found him normal with no residuals of any injuries he may have sustained in the accident of August 31, 1960. It was his opinion that no damage had been done to the cartilage of Borowske's knee, but that if a theoretical person did sustain an injury of that type, such injury would be permanent.

At the conclusion of the testimony and final argument the trial court gave an instruction relative to the emergency rule. The defendants contend that this was error as Borowske was negligent as a matter of law with respect to lookout. Secondly, the defendants contend that undue emphasis was put on the emergency doctrine because counsel for plaintiff, Borowske, mentioned such doctrine in his final argument. No record of the final argument in question is before this court. The only evidence to such argument is an affidavit by counsel for defendants stating that such argument was made. On oral argument before this court it appears that such affidavit was not approved by the trial judge as part of the bill of exceptions and therefore will not be considered on this appeal.

Whether such argument was made or not is not important, however, since the jury found Borowske 25 percent causally negligent with respect to the accident and in such situation the emergency doctrine does not apply.

"To be entitled to the benefit of the emergency rule, the party so claiming carries the burden of proving, (1) that an emergency developed so suddenly and unexpectedly that there was no time for considered action, and (2) that no act or failure to act on his part contributed to the emergency, but the evidence in the instant case, as to when the driver of the colliding truck first saw the automobile coming out from a tavern driveway, and as to when he became concerned and active about a possible collision, failed in every respect to meet such requirements so as to entitle him to the benefit of the emergency rule." *Baird v. Cornelius* (1961), 12 Wis. (2d) 284, 107 N. W. (2d) 278. Headnote 4.

The instruction given by the trial court was clear in this regard, to wit:

"If you are satisfied that either driver without fault became confronted with an unforeseen emergency which was not brought on by a failure on his own part to exercise ordinary care and which unforeseen emergency would overpower the judgment of an ordinarily careful person so that momentarily he was not capable of intelligent action, he may not have been negligent or have failed to exercise ordinary care, and the law did not require him if and when confronted with such an emergency not produced by himself to take the best means to avoid a collision.

"It is but a natural impulse for one so situated to do that which upon the moment he may believe will avert or minimize the consequences of certain collision. The law does not require him to act in a manner which subsequent contemplation and consideration may indicate to have been the best course for him to pursue. He is permitted to do that which seemed best for him at the time and under the circumstances. However, you will bear in mind that this rule does not apply to any person who is negligent in getting into the situation

of impending danger. One is not entitled to the benefit of this rule unless he is without fault in creating the emergency."

Under the facts in this case the instruction on the emergency doctrine should not have been given. However, we cannot hold that the giving of the instruction was prejudicial for it applied with equal force to either of the parties in the action.

## Damages.

Borowske did not introduce any evidence as to future pain, suffering, or disability through his expert witness, Dr. Haines. Dr. Haines did testify that Borowske sustained an injury to a cartilage in the knee. Dr. Kilkenny, an expert witness for the defense, found no such injury, but testified that if such an injury existed it would be permanent. Dr. Kilkenny also stated that he thought Borowske had some pain in his left foot but could find no cause for such pain from his examination.

The trial court's instruction was as follows:

"Your duty is to find what the evidence warrants and not to speculate or guess on what is possible or probable. The jury would not be justified in guessing that future damages will occur which the evidence does not prove."

Defendants asked for an instruction to the effect that there was no testimony to establish future pain, suffering, or disability and therefore not to award any damages for these items.

The special verdict did not categorize damages for injuries, but awarded them in a lump sum, to wit:

"*Question 6.* What damages did Frank Borowske sustain . . . (e) By reason of his injury? *Answer:* $3,500."

There is no means of establishing whether the jury included in this amount an award for pain, suffering, and disability which may occur in the future. Such award for future pain, suffering, and disability would not be warranted on the basis of the evidence except with respect to the injury to Borowske's right knee.

The rule is well stated in *Peterson v. Western Casualty & Surety Co.* (1958), 5 Wis. (2d) 535, 540, 93 N. W. (2d) 433:

"We consider that the rule expressed in *Diemel v. Weirich* (1953), 264 Wis. 265, 268, 58 N. W. (2d) 651, with reference to allowance for the future continuation of pain where the injury is subjective in character, is applicable here, both to continuation of pain and other disagreeable sensations and continuation of the disability which results therefrom. 'The members of juries also being laymen should not be permitted to speculate how long, in their opinion, they think such pain will continue in the future, and fix damages therefor accordingly. Only a medical expert is qualified to express an opinion to a medical certainty, or based on medical probabilities (not mere possibilities), as to whether the pain will continue in the future, and, if so, for how long a period it will so continue.'"

The jury could believe Dr. Haines that a cartilage in the knee was injured and the jury could also believe Dr. Kilkenny that if such an injury occurred it would be permanent and reject Dr. Kilkenny's testimony that such injury did not occur to Borowske's right knee. It is possible that the jury may have projected Borowske's injury into the future as he was receiving treatments at the time of the trial and had been receiving treatment continuously since the accident occurred. For this reason a more-detailed instruction with respect to specific injuries sustained by Borowske would have been desirable. If the damages are reasonable in view of the

evidence which was introduced, however, a failure to instruct the jury more particularly is not prejudicial error.

The last contention made by defendants is that the damages awarded for injuries are excessive. Two cases are cited in support of defendants' contention that the damages awarded are excessive. In *Wenneman v. Royal Indemnity Co.* (1947), 251 Wis. 630, 30 N. W. (2d) 250, an award of $3,000 was held excessive for injuries consisting of abrasions and contusions to the plaintiff's legs and pain in his neck, ear, and spine. The medical testimony revealed that immediately after the accident plaintiff received treatment for his legs and complained about a muscle strain of the neck. Plaintiff later complained of pain in his ear and spine. One doctor testified that plaintiff had fully recovered, another that the only objective evidence of injury was some rigidity of the muscle in the neck. An ear specialist under the second doctor's supervision concluded that several additional months would be required before the residuals of the injury would be permanently improved, with a possibility that complete recovery may not occur. A third doctor found no objective signs of injury. This court observed that prior to the accident plaintiff worked as a bus driver and a part-time musician. Twenty days after the accident he resumed work, working longer hours than before, and continuing his activity as a musician. The accident occurred in June of 1946, and the action was heard before this court in November of 1947. Because the trial took place less than eighteen months after the accident and there was no testimony as to future pain, suffering, and disability, the time period for which plaintiff was to be compensated consisted of only about one year. In the instant action the trial occurred two years after the accident.

The second case relied on by defendants is *Karsten v. Meis* (1953), 263 Wis. 307, 57 N. W. (2d) 360, wherein the

plaintiff sustained injuries consisting of a brain concussion, cuts of the hands and arms, contusion and sprain of both wrists, abrasion of both ankles, and a broken tooth. He was hospitalized six days and given sedatives. He later complained of pain in his chest and both wrists. This court made the following comment on the medical evidence (p. 311):

"The evidence established that at the time of trial there had been a complete recovery from all the injuries suffered in the accident. Aside from the pain which appellant suffered during his hospitalization, there is no evidence of pain except in his own testimony, and the doctors could not account for it on the basis of their objective findings."

Plaintiff was injured on October 6, 1948, and returned to work on December 8, 1948. On this evidence the trial court concluded that $4,000 damages for injuries was excessive and such determination was affirmed by this court. This is a somewhat-different situation than the instant action, where the trial court approved the jury's findings.

Both cases relied on by defendants were decided some years ago, the most recent is a decision of 1953. Damages from that period can hardly be compared directly to damages which might be awarded now. The evidence in the instant case establishes that Borowske suffered painful injuries as a result of the accident with Hurth, that he used crutches for more than a month, and needed help to run his farm for two and one-half months. He still feels pain in his knee and foot when he works hard, and was at the time of the trial receiving treatment for those injuries. No juror dissented to the award of $3,500 and the trial judge approved it.

In *Makowski v. Ehlenbach* (1960), 11 Wis. (2d) 38, 42, 103 N. W. (2d) 907, this court quotes 15 Am. Jur., Damages, pp. 621, 622, sec. 205, where it reads in part:

" 'Since it is for the jury, and not for the court, to fix the amount of the damages, their verdict in an action for un-

liquidated damages will not be set aside merely because it is large or because the reviewing court would have awarded less. Full compensation is impossible in the abstract, and different individuals will vary in their estimate of the sum which will be a just pecuniary compensation. Hence, all that the court can do is to see that the jury approximates a sane estimate, or, as it is sometimes said, see that the results attained do not shock the judicial conscience.' "

We cannot say categorically and as a matter of law that the damages awarded were excessive.

*By the Court.*—Judgment affirmed.

CURRIE, HALLOWS, and WILKIE, JJ. (*dissenting*). We respectfully dissent from that portion of the majority opinion holding that the giving of the emergency instruction, although in error, was not prejudicial to the appellants and, therefore, is not a proper ground for awarding a new trial. We are of the opinion that the giving of the emergency instruction was not only erroneous, as the majority concedes, but it was highly prejudicial to Hurth and his insurer.

The majority summarizes the testimony of both drivers on the question of lookout at the intersection. Hurth stated that he first saw the Borowske car approaching from the south when it was approximately 300 feet from the intersection and Hurth was some 250 to 275 feet west of that intersection. He made this observation through a gap in the brush on the southwest corner of the intersection. Hurth again saw the Borowske vehicle when Hurth was approximately 50 to 75 feet west of the intersection and when, at that point, Borowske's car was a length and a half from the intersection. It is undisputed that Hurth then applied his brakes and skidded for at least 70 feet before the collision in the intersection. Hurth's testimony thus would not suggest to the jury that he was confronted with an emergency when he first saw the Borowske car.

On the other hand Borowske testified that he did not see the Hurth vehicle until he entered the intersection. He claimed that his vision was obscured to the west as he approached the intersection because of the presence of the willows and tag elders, although Hurth was able to see the Borowske car through this brush. Borowske followed this testimony with this statement, "When I saw him coming, I had to put it in reverse or go ahead, so I stepped on the gas and tried to get across the intersection." The total effect of this testimony of Borowske is to convey the impression to the jury that when he first saw the Hurth car he was confronted with an emergency.

On this record it is clear that Borowske was negligent as to lookout and, because of his own negligence in this regard, was not entitled to the benefit of the emergency instruction. The majority concludes that the instruction applied to both parties and that, therefore, although given in error, it did not work any prejudice on Hurth and his insurer. We disagree. As a matter of law Hurth was never confronted with an emergency and has never so contended. Borowske's own negligence was a definite contributing factor to the collision and, therefore, he was not entitled to the emergency instruction. Under these circumstances we cannot agree that the instruction applied equally to the two parties and favored neither. It seems to us clear that the result of giving the instruction was all to the benefit of Borowske because it was he and not Hurth who testified that he was faced with an emergency. Thus it was prejudicial because of the probability that it affected the jury's comparison of negligence.

Whether or not the vision at that corner was obstructed makes no difference as to the prejudicial nature of the erroneous instruction. Borowske himself admits that he did not see Hurth until he entered the intersection and he would either be negligent as to lookout because he did not see what

he obviously could have seen through the brush if the jury concluded there was not a complete obstruction, or, on the other hand, he would be guilty of negligence as to speed if he proceeded as he did into a blind intersection. In either event, Borowske's own negligence would deprive him of the right to the emergency instruction. See *Baird v. Cornelius* (1961), 12 Wis. (2d) 284, 107 N. W. (2d) 278. Because of this error we would reverse the judgment and remand the cause for a new trial on all issues.