GIRTZ (Gertrude E.), Plaintiff and Respondent, v. OMAN and another, Defendants: CARRIERS INSURANCE EXCHANGE, Defendant and Appellant.

GIRTZ (Robert H.), Plaintiff and Respondent, v. SAME, Defendants: SAME, Defendant and Appellant.

*October 30—November 26, 1963.*

[6] *Hibbard v. Western Union Telegraph Co.* (1873), 33 Wis. 558.

506

For the appellant there were briefs by *Petersen, Sutherland, Axley & Brynelson,* and oral argument by *Donald F. Mitchell,* all of Madison.

For the respondent Gertrude E. Girtz there was a brief by *Oldenburg & Peckham* of Madison, and oral argument by *Hugh F. Oldenburg.*

For the respondent Robert H. Girtz there was a brief by *Swingen, Stern & Lenahan* of Madison, and oral argument by *E. M. Swingen.*

BROWN, C. J.    The questions raised on appeal are:

(1) Whether there is any evidence that the accident caused loss of income to Girtz.

(2) Whether the trial court committed prejudicial error in permitting respondents to amend their complaints to include additional allegations of negligence.

(3) Whether the jury award of $14,917 to Gertrude Girtz is supported by evidence in the record.

(4) Whether a new trial should be ordered in the interest of justice.

### (1)    *Loss of Income.*

Robert Girtz testified that he was self-employed and was engaged in the trucking business; he owned and operated his own semitruck. This was not the one involved in the collision. Girtz stated he earned between $4,500 to $5,000 a year, less 10 percent investment in his truck. He stated that in the first year after the accident he did not operate the

truck and that he did not lose anything except the loss of his investment in the truck. In the second year he made between $300 and $400; he quit the trucking business in 1962 when he sold his semi.

The record shows that the injury sustained by Girtz as a result of the accident was a laceration of the side of the head. He testified at the trial that he had pains in his neck and chest which bothered him occasionally. He also stated that he had become nervous since the accident. Based upon this evidence the jury awarded him $500 for pain and suffering and $500 for permanent injuries. It also found that his loss of earnings prior to trial was $4,000, which award is attacked on appeal.

Damages for loss of earning are recoverable if Girtz was unable to perform his usual work as a truck driver, which inability was caused by the accident in question. Such a finding must be supported by some evidence in the record. *Smee v. Checker Cab Co.* (1957), 1 Wis. (2d) 202, 207, 83 N. W. (2d) 492.

In the present case, the record only shows that Girtz did not perform his usual work as a truck driver; it does not contain any evidence that Girtz was unable to work and that this inability was caused by the accident. The injuries received by Girtz were minor, and an inference cannot be drawn from them that he in any way was incapacitated from performing his normal work. Girtz lives in Indiana, and although the record shows he did not pursue his trucking business he did drive at least 4,000 miles per year since the accident. There is also no testimony from his treating physician that he could not work or was medically advised not to work during the period in question.

Therefore, the record does not support the jury finding that Girtz's loss of earnings resulted from the accident, and this finding must be set aside.

## (2)   *Amendment of Complaint.*

The original complaints brought by Robert and Gertrude Girtz alleged that Robert Oman was negligent as to speed, lookout, and management and control. There was no motion by appellant, then defendant, to make the complaint more definite and certain.

At the commencement of trial on March 7, 1963, Robert and Gertrude Girtz, by their respective attorneys, moved the trial court to have their complaints amended to allege negligence as to invading the lane of travel of Robert Girtz, improper passing, and failing to sound horn. Appellant claimed surprise; however, it did not seek an adjournment. The trial court allowed the amendments but put only a general question of negligence in the special verdict. Now on appeal appellant claims that prejudicial error was committed by the trial court in permitting the complaint to be amended.

Sec. 269.44, Stats., provides:

"AMENDMENTS OF PROCESSES, PLEADINGS AND PROCEEDINGS. The court may, at any stage of any action or special proceeding before or after judgment, in furtherance of justice and upon such terms as may be just, amend any process, pleading or proceeding, notwithstanding it may change the action from one at law to one in equity, or from one on contract to one in tort, or vice versa; provided, the amended pleading states a cause of action arising out of the contract, transaction or occurrence or is connected with the subject of the action upon which the original pleading is based."

This section gives the trial court wide discretion as to amendment of pleadings. *Grady v. Hartford Steam Boiler Inspection & Ins. Co.* (1954), 265 Wis. 610, 617, 62 N. W. (2d) 399; *Kuester v. Rowlands* (1947), 250 Wis. 277, 282, 26 N. W. (2d) 639.

The original complaint of Gertrude Girtz states:

"8. That on or about the 11th day of June, 1959, at approximately 6:20 A. M., the plaintiff was riding in an automobile owned and operated by her husband, the defendant Robert H. Girtz, in a general northerly direction along and upon the said U. S. Highway 12. That at that same time and place, so this plaintiff is informed and believes, a tractor-trailer combination owned by defendant Brady Motor Freight Lines, Inc. and operated at the time by defendant Robert W. Oman as agent and employee of the said Brady Motor Freight Lines, Inc. was being operated in the same general northerly direction immediately to the rear of the automobile operated by the defendant Robert H. Girtz. That as the driver of the tractor-trailer combination attempted to pass the automobile driven by the defendant Robert H. Girtz, the two vehicles collided, which said collision resulted in the injuries and damages hereinafter complained of by this plaintiff."

The original complaint of Robert Girtz contains substantially the same allegations.

From these allegations it is evident that the general position of plaintiffs was that Oman was negligent in some regard in attempting to pass the Girtz vehicle. The particularities surrounding the accident were learned by discovery examinations. Allowance of amendments lies within the sound discretion of the trial court. These amendments of the complaints were allegations of more-specific acts of negligence of Oman in his attempt to pass the Girtz vehicle. They were still within the general position taken by plaintiffs in their original complaints. In the absence of the amended complaints, the evidence offered at the trial would have been admissible because it directly bears on the acts of negligence alleged in the original complaints. Also, the special verdict in this case did not contain any specific questions of negligence but contained only a general question of negligence as to each driver. Under these circumstances the amended complaints did not prejudice appellant. Its defenses which were based on the facts surrounding the accident learned by dis-

covery examinations would have remained the same. Appellant does not show any abuse of discretion on the part of the trial court in permitting Gertrude and Robert Girtz to amend their respective complaints. Appellant's contention is without merit.

### (3)   *Award to Gertrude Girtz.*

Appellant claims that the record does not contain sufficient evidence to sustain the jury award of $14,917 to Gertrude Girtz for her injuries sustained as a result of the accident. It contends that the verdict is excessive and that appellant should be granted the option of remitting the excess over and above such sum as we deem reasonable or of having a new trial on the issue of damages. It claims $10,000 is a reasonable sum.

The record shows substantial evidence which supports the jury award of $14,917. Mrs. Girtz, fifty-five years of age, was thrown from the pickup and was rendered unconscious. When she became conscious she was lying in front of the dual wheels of the semi. She was rushed to St. Mary's Ringling Hospital, Baraboo, Wisconsin, where she was given emergency treatment by Dr. John Siebert.

The testimony of Dr. Siebert is exhaustive in regard to the amount of injuries and pain and suffering experienced by Mrs. Girtz. It is necessary only to recount he stated that she suffered from lacerations, contusions, and abrasions on the exterior of the body. X rays showed that she had fractured two ribs which caused hemothorax, the pouring of blood into the pleural cavity impairing respiration. Severe pain accompanied this injury.

X rays also showed that the first and second lumbar segments of her spine were crushed or compressed. There was a great compression of the middle thoracic segment. Dr. E. J. Nordby, an orthopedic surgeon, testified that these X rays

also showed that her eleventh and twelfth dorsal vertebrae were slightly crushed. He stated that there was marked tenderness of the spinal muscles and increased muscle tone.

Dr. Siebert stated that when Mrs. Girtz was first admitted she was suffering from shock and was in extreme pain. She was in severe pain for about two weeks and required heavy sedation. Mrs. Girtz remained in the hospital about a month and left when she became ambulatory, although she wore a back-support brace.

Dr. Nordby began to treat Mrs. Girtz about a year after she left the hospital. Her ailments were still pain in upper back, right buttocks, walking with pain, and numbness in her right leg. Her right thumb felt numb from a strain suffered in the accident. She also had noticeable backward curvature of the upper back.

At the trial, about four years after the accident, Dr. Nordby stated that her permanent disabilities are a decrease in endurance and power of her back, an increase in discomfort due to the injuries sustained to her back, and discomfort to her right thumb.

In view of the extent of her injuries, the severe pain and suffering accompanying them, and her permanent disabilities as shown by the extensive testimony, the award of $14,917 is well substantiated by evidence in the record relating to compensation for her injuries.

(4) *New Trial.*

Appellant contends that a new trial pursuant to sec. 251.-09, Stats., should be ordered in the interest of justice. It argues that the cumulative effect of the amendments to the complaints, the award to Gertrude Girtz for injuries, the award to Robert Girtz for loss of earnings, and the quantum of negligence attributed to each driver indicates that justice has miscarried.

No error occurred in allowing the amendments to the complaints, and the award to Mrs. Girtz was not excessive. The award to Robert Girtz for loss of wages can be corrected by setting it aside.

With respect to the quantum of negligence attributed to each driver, appellant claims that the apportionment of 90 percent negligence on the part of Oman and 10 percent on the part of Robert Girtz resulted in a miscarriage of justice in view of the testimony of two disinterested witnesses. These witnesses saw the house trailer pulled by Girtz cross the center line of the highway and make initial contact with Oman's semi as he tried to pass Girtz. Appellant argues that this invasion of Oman's lane of passing makes Robert Girtz at least 50 percent negligent.

On appeal the evidence is viewed most strongly in favor of the prevailing party. *Mustas v. Inland Construction, Inc.* (1963), 19 Wis. (2d) 194, 201, 120 N. W. (2d) 95, 121 N. W. (2d) 274. A jury verdict on the comparison of negligence is overturned only on rare occasions. *Kraskey v. Johnson* (1954), 266 Wis. 201, 204, 63 N. W. (2d) 112; *Davis v. Skille* (1961), 12 Wis. (2d) 482, 489, 107 N. W. (2d) 458.

The testimony and evidence in the present case are in hopeless conflict but when viewed in a light most favorable to Girtz they do support the comparison of negligence. The two witnesses, riding in the car behind Oman, testified that they saw the house trailer weave prior to Oman's passing it, and that the house trailer in a weaving motion moved over in Oman's lane and struck the semi. However, they were the only ones who saw the house trailer weave. Oman, the driver of the semi, testified that he followed the Girtz trailer for about a half mile and did not notice the house trailer weave in the least; he said it was going straight and did not notice anything unusual. He had watched the house trailer

until he pulled out in the left lane and had commenced to pass Girtz, at which time he watched only the road in front of him.

Girtz stated the house trailer had never weaved in the 15,000 miles that he had pulled it. A special hydraulic hitch attached the house trailer to the pickup which was to prevent weaving. He stated that occasionally he looked out the rear-view mirror but never saw it weave.

There is also a conflict in the testimony as to the relative positions of the two vehicles when the first impact occurred. Girtz testified that Oman had not yet got alongside of him when it happened, and that the impact was on the back right corner of the house trailer. However, Oman stated that he was alongside of Girtz when the initial collision occurred. The two witnesses supported Oman's testimony; they testified that they did not notice any impact between the semi as it passed the back end of the house trailer, but that there was one when the semi was alongside it.

The semi was 50 feet long, eight feet high, weighed 50,000 pounds, and eight feet wide with two rearview mirrors attached to the stub-nosed cab projecting about eight inches out on each side and four inches to the front of the cab. The house trailer was about eight feet high and eight feet wide. The highway was 20 feet wide, 10 feet in each lane.

The record indicates that Oman did not sound his horn to warn Girtz of his intention to pass, nor was Girtz aware Oman was passing until after the first impact. Girtz was traveling between 40 and 45 miles per hour; in order to pass, Oman was traveling somewhat faster. At the most there was only about three to four feet of clearance between the two units, which was further reduced by the projecting mirror of the semi.

The weight of the evidence and credibility of the witnesses is for the jury to consider. The jury could have given more weight to Girtz's and Oman's testimony that the house trailer

did not weave than to the testimony of the two witnesses who said it did weave. It could have believed Girtz rather than Oman and the two witnesses that the first impact occurred just as the cab of the semi, still in its proper lane, began passing the house trailer and that the mirror projecting from the cab struck the right rear corner of the house trailer which was also in its proper lane.

The findings of negligence by the jury could be based upon another theory. The jury could have also reasonably believed that as the semi was getting alongside of the house trailer, due to the narrow clearance between the semi and the house trailer, strong air currents disturbed the straight path of the latter and caused it to weave and strike the semi. This theory would partially account for the conflict in testimony relative to the weaving of the house trailer. The failure of Oman in not giving warning of his intention to pass becomes significant because had Girtz been given warning he could have moved more to his right in order to minimize or prevent weaving. Failure to watch the house trailer when the clearance was so narrow can also be considered an aspect of negligence.

Therefore, based upon the weight of the evidence and credibility of the witnesses the jury could reasonably have found in the light of either of these two theories that Oman was 90 percent causally negligent.

*By the Court.*—The judgment in favor of Robert H. Girtz is reduced by $4,000 and, as so modified, is affirmed. The judgment in favor of Gertrude E. Girtz is affirmed.