NEWBERGER, Respondent, v. POKRASS and another, Executors, Appellants.

*January 3—January 31, 1967.*

570

For the appellants there was a brief by *Arnold, Murray & O'Neill* of Milwaukee, and oral argument by *Suel O. Arnold.*

For the respondent there was a brief by *Stern & Lee* of Milwaukee, and oral argument by *James F. Stern.*

WILKIE, J.   Several issues are presented on this appeal on the general subject of liability:

1.   Is there credible evidence to sustain the jury's verdict that the pilot, Willard Pokrass, was negligent?

2.   Is there credible evidence to sustain the jury's verdict apportioning the negligence as between the plaintiff and Willard Pokrass?

3.   Did the trial court err in instructing the jury on the subject of *res ipsa loquitur?*

*Liability.*

Appellants argue that there is no credible evidence to sustain the jury finding of negligence by the deceased pilot. We have searched the record and find ample evidence to support the jury's finding. Pokrass could have been found negligent by the jury in several respects. As he left Wausau, Pokrass set his course at a very low altitude in view of the very hilly terrain over which he was flying. Pokrass' altimeter setting was faulty so that he was actually flying 170 feet lower than indicated by the altimeter. Pokrass chose to attempt to reach his destination at Rhinelander in spite of warnings to stay on the ground and unfavorable weather reports. Pokrass also flew a very low course in view of the high winds and turbulent weather which existed.

The jury could also infer that Pokrass was negligent in going to sleep while piloting the plane. A short time after the takeoff from Wausau, plaintiff Newberger

told Pokrass he was sleepy and was going to sleep. Pokrass said he was tired also and Newberger told Pokrass to wake him if he was needed. Newberger dozed off for about five to ten minutes and woke up a few seconds before the plane struck the trees. Newberger's testimony as contained in the Civil Aeronautics Board (hereinafter CAB) report (which report was admitted in evidence by all parties) is as follows:

". . . I looked down, saw that we were going to hit the trees; and I yelled to Willard, 'We are going to hit the trees'. He said 'I know', and he said nothing else. I believe that Willard answered in his sleep. I do not think he was aware of what was going on. I believe he must have dozed off and replied the way anybody would reply if a question was directed at someone who had dozed but wasn't sound asleep.

". . .

"I find, after all of this time, that his answer was so foolish that I assume it must have been given in a dopey, sleepy condition. As I think back on it, the tone of his voice was such that he didn't sound as if he were aware of what was going on."

At the trial Newberger testified that Pokrass responded to his cry "as though he were asleep."

Although Newberger did not testify that Pokrass was asleep, the above testimony was sufficient for the jury to infer that the deceased did fall asleep while flying the plane after Wausau.

We held in *Theisen v. Milwaukee Automobile Mut. Ins. Co.*[1] that sleeping at the wheel of a car is negligence as a matter of law unless a showing can be made that the loss of consciousness is excusable on a nonactionable basis. This ruling is based on the premise that sleep ordinarily does not occur without some warning, and falling asleep while driving is the usual result of failing to heed this warning. In the case at bar the evidence

[1] (1962), 18 Wis. (2d) 91, 118 N. W. (2d) 140, 119 N. W. (2d) 393.

supports a finding that Pokrass was negligent in this respect.

The appellants also contend that Newberger's negligence was equal to the negligence of the deceased pilot as a matter of law, whereas the jury apportioned only 15 percent of the total negligence to Newberger and 85 percent to the deceased pilot. The apportionment of negligence is a jury question,[2] and the credible evidence standard is to be applied in reviewing jury verdicts on apportionment.[3]

Under these rules, the jury's apportionment of negligence is supported by credible evidence. Only two acts of conduct of the plaintiff could be considered negligent. The first was falling asleep and this was probably the basis of the apportionment. The plaintiff could possibly have prevented the accident by remaining awake. On the other hand, Pokrass was an accomplished pilot used to flying at night. Moreover, plaintiff Newberger had no knowledge of how to fly a plane, nor could he have exercised any control over the handling of the plane. The second reason the plaintiff could have been guilty of contributory negligence was in going on the trip at all under the circumstances. However, if plaintiff chose to remain in Wausau, he would have been all alone with no transportation home and no lodging for the night. Moreover, plaintiff had confidence in Pokrass' judgment. The jury's apportionment of negligence is not so grossly disproportionate that the appellants are entitled to a holding of equal negligence as a matter of law.

[2] *Baumgarten v. Jones* (1963), 21 Wis. (2d) 467, 124 N. W. (2d) 609; *Girtz v. Oman* (1963), 21 Wis. (2d) 504, 124 N. W. (2d) 586; *Maus v. Cook* (1961), 15 Wis. (2d) 203, 112 N. W. (2d) 589.

[3] *Maus v. Cook, supra,* footnote 2, at page 206, "When a jury's findings are attacked on appeal, particularly when they have had the trial court's approval, our inquiry is limited to the issue whether there is any credible evidence that, under any reasonable view, supports such findings."

Appellants argue that they were entitled to an instruction on the presumption of due care accorded a deceased party. This presumption is a limited one which is not evidence, and which is eliminated when evidence is introduced which would support a jury finding contrary to the presumption.[4] The presumption was rebutted by evidence of negligence asserted above, and the trial court correctly refused to give this instruction.

Appellants argue that the trial court erred in giving the jury an instruction of *res ipsa loquitur*, arguing that, on the basis of the evidence, it would require the testimony of an expert to prove that anything the pilot did or failed to do was negligent. In giving the *res ipsa loquitur* instruction in the instant case the issue is whether an accident of this nature occurs without some human act of negligence on the part of the pilot. All mechanical failures were ruled out by the CAB examination and report. In a case such as this, a reasonable inference may then arise that the cause was human fault, and an instruction of *res ipsa loquitur* is proper.[5]

The appellants contend that the jury award of $20,000 for wage loss and $55,000 for pain and suffering and disability is excessive. The trial court analyzed these claims in detail and approved each award after carefully summarizing the supporting evidence. The trial court correctly referred to the rules set forth in *Moritz v. Allied American Mut. Fire Ins. Co.*[6] for the review of damage verdicts challenged as excessive. We are confronted with an allegation that a verdict is excessive notwithstanding approval of that verdict by the trial court.

---

[4] *Theisen v. Milwaukee Automobile Mut. Ins. Co., supra,* footnote 1, at page 100.

[5] *Lange v. Nelson-Ryan Flight Service, Inc.* (1961), 259 Minn. 460, 108 N. W. (2d) 428.

[6] (1965), 27 Wis. (2d) 13, 21, 133 N. W. (2d) 235.

"A damage verdict which has been approved by the trial court will not be disturbed if 'there exists a reasonable basis for the trial court's determination after resolving any direct conflicts in the testimony in favor of plaintiff.' "[7]

### Wage Loss.

Appellants first claim that the award of $20,000 for wage loss is excessive. No claim of future wage loss was involved in this figure. Plaintiff was engaged in an aquarium supply manufacturing business. The business was incorporated under the name of General Developments Corporation and plaintiff was the sole stockholder and the sole employee. The corporation had a national and international market and plaintiff spent twenty-five to thirty-five weeks a year traveling and maintaining customer contacts. In essence, plaintiff's business was a highly competitive one and his services were essential to its success.

Plaintiff introduced his income tax reports in evidence to support his claim for loss of wages. These reports showed the following yearly income:

| Before Accident | | After Accident | |
|---|---|---|---|
| 1960 | $14,389.15 | 1963 | $ 138.01 |
| 1961 | 8,536.84 | 1964 | 1,720.00 |
| 1962 | 8,379.83 | 1965 | 4,000.00 |

Plaintiff's average income for the three years preceding the accident was $10,435.27. These figures alone support the award of $20,000 for wage loss. That award is not excessive.

---

[7] *Kablitz v. Hoeft* (1964), 25 Wis. (2d) 518, 525, 131 N. W. (2d) 346, quoting from *Boodry v. Byrne* (1964), 22 Wis. (2d) 585, 589, 126 N. W. (2d) 503. See also *Gleason v. Gillihan* (1966), 32 Wis. (2d) 50, 59, 145 N. W. (2d) 90.

*Pain, Suffering and Disability.*

We also conclude that the award of $55,000 for pain, suffering and disability is not excessive.

This was a most unusual accident. The plaintiff went through a fourteen-hour ordeal which involved much physical and mental suffering. He was thrust into a bitterly cold environment with no hat and no gloves, and only light tattered clothing for protection. In the crash he suffered seven fractured ribs, severe lung damage from smoke inhalation, pneumonia, and first and second degree burns to his hands, face, head and ears. Mobility was achieved with great difficulty and breathing was very painful.

Plaintiff was alone throughout the night in this barren environment covered by a foot of snow, and he testified that he watched the bodies of his friends burn. Over twelve hours later he struggled almost a mile to a road where he almost gave up his bid for survival before he was rescued. He was taken to a hospital where he spent five weeks. Although not completely recovered, he then left to return to Milwaukee. He remembers virtually nothing about his first week in the hospital. However, no pain depressant drugs were given to him because of the fear of pneumonia. Every day, to avoid lung congestion, plaintiff was required to walk with great pain.

Plaintiff, only thirty-six at the time of the crash, suffered numerous physical injuries, some of which have left residuals. (1) He fractured seven ribs leaving, on healing, a chronic and painful dislocation in the chest. (2) His head, hands and ears were burned and frostbitten, leaving his right hand permanently scarred, and thin skin on parts of his hands and ears. (3) There is serious lung damage; he has a persistent cough. (4) There is a slight depression near the upper portion of his scalp. (5) Because of a nerve involvement, he has

a 25 percent decrease in sensitivity in the left anterior side of his thigh. (6) He cannot live in places of cold temperature. (7) He suffers mentally, having nightmares, and in the words of Dr. Henderson, such persons (who have had injuries and exposures such as this) "cannot add as readily; they forget things and so on; and are not as sharp."

In the end the jury must have included in the award a considerable sum for pain and suffering as distinguished from personal injuries and disabilities in connection therewith. That the jury should have done so here is entirely reasonable. There was excruciating pain not only during the initial fourteen-hour ordeal but throughout the hospitalization and the transfer to Milwaukee. Further pain and suffering occurred throughout the recuperation and still occurs. In view of the entire record we must conclude that the award is reasonable.

Relative to the award for pain, suffering and disability the appellants also argue that the trial judge committed prejudicial error in letting the following statement into evidence:

"*Q.* Mr. Newberger, what were you thinking?
"*Mr. Arnold:* Well, I object to that, too. 'What were you thinking' is of no concern to us.
"*The Court:* No, that's overruled.
"*A.* Well, of course, I had a multitude of feelings. I was terribly grief-stricken about Willard and Barbara. I imagined very fearful things happening. I remember thinking all night that, when the flames died down, I was going to be devoured by Northern Wisconsin timber wolves. I don't even know now if there are wolves in the area; but this was a recurrent fear—that when there would be no fire, I was going to be devoured by wolves.
"I had the mental frame of mind that you might imagine I had, having stood for several hours during the night warming my hands over the burning body of one of my best friends, to keep warm and to survive myself. This kind of twists you up emotionally. It's too bizarre

and too grotesque, I know, to put into words or to communicate to you.

"But that was how I spent the night."

This statement concerned Mr. Newberger's state of mind immediately following the accident. The appellants argue that admitting this statement was prejudicial error because it was so emotionally charged. The trial court let this evidence in because it was relevant to the proof of mental anguish and mental damages. Obviously, mental suffering was an important part of the plaintiff's case and is a proper element of damage where related to a physical injury.[8] This evidence was highly relevant to the mental suffering of the plaintiff and was admissible for this reason.

*By the Court.*—Judgment affirmed.

---

[8] 25 C. J. S., Damages, p. 821, sec. 65.