BILLINGSLEY, Appellant, v. ZICKERT and others, Respondents.

*No. 151 (1974). Argued March 3, 1976.—Decided April 7, 1976.*
(Also reported in 240 N. W. 2d 375.)

158

For the appellant there was a brief by *Johnson, Bieber & Swingen* of Madison, and oral argument by *Daniel G. Sandell.*

For the respondents there was a brief by *John Koeppl* and *Stafford, Rosenbaum, Reiser & Hansen* of Madison, and oral argument by *Mr. Koeppl.*

HANLEY, J. The issues presented are as follows:

1. Did the trial court commit error in ruling that as a matter of law the area surrounding the accident scene was a "business district"?

2. Did the trial court err in instructing the jury on the duty of an automobile operator to remain awake?

3. Did the trial court err in instructing the jury on the effects of intoxicating beverages?

4. Should a new trial be granted?

5. In recovering costs are the disbursements of a party for photographs and plats taxable to a limit of $50 per category?

*Business district.*

The appellant contends that the trial court erred in its ruling as a matter of law that the accident scene was in a "business district," defined by sec. 340.01 (6), Stats. Appellant argues that this ruling erroneously barred her from receiving jury instructions on the effects of certain safety statutes.

Zickert well notes that the refusal of instruction on certain statutes had nothing to do with whether the area in question is a "business district." Providing that torches or lanterns are to be placed ahead and behind a stopped vehicle, sec. 347.29 (1), Stats., is applicable:

"Except as provided in s. 347.26 (11) (b), whenever any motor truck, motor bus, trailer or semitrailer more than 80 inches in width or truck tractor or road tractor is left standing, whether attended or unattended, during hours of darkness upon the traveled portion of any highway or the shoulder adjacent thereto outside the corporate limits of a city or village, the operator of such vehicle shall display the following warning devices upon

the highway during the entire time the vehicle is so left standing and such devices shall be placed in the following order:

" . . . "

It is undisputed that the accident scene was within the corporate limits of McFarland. An argument was made that the incorporation of sec. 347.29, by ordinances of McFarland was intended to delete the corporate limit restriction by implication, but this contention is spurious in light of the additional paragraphs of the statute which apply to other conditions without reference to corporate limits. The warning signals required by the statute are also applicable to any vehicle, other than an automobile, which is stopped for more than ten minutes on the traveled portion of any highway or shoulder during hours of darkness, sec. 347.26 (11) (b), without regard to the village limits. This also has nothing to do with "business districts." Appellant's request for instructions dealt only with the inapplicable sec. 347.29. A jury instruction request on sec. 346.26 (11) (b) does not appear. The trial court in fact instructed that no warning signals needed to be put out. Such instruction was deemed necessary because of the apparently unfounded references to such duty made by the appellant. In a posttrial memorandum opinion, the court deemed sec. 347.26 (11) (b) inapplicable anyway on the record adduced. Zickert's testimony was quite clear to the effect that he stopped to make a correction and did not intend other than a brief pause, which the statute specifically intended to except.

A determination on the issue of the character of the area was relevant only to the following statute:

"**346.51 Stopping, standing or parking outside of business or residence districts.** (1) No person shall park, stop or leave standing any vehicle, whether attended or unattended, upon the roadway of any highway *outside a*

*business or residence district* when it is practical to park, stop or leave such vehicle standing off the roadway, but even the parking, stopping or standing of a vehicle off the roadway of such highway is unlawful unless the following requirements are met:

"(a) An unobstructed width of at least 15 feet upon the roadway of such highway must be left opposite such standing vehicle for the free passage of other vehicles.

"(b) Such standing vehicle must be capable of being seen by operators of other vehicles from a distance of 500 feet in each direction along such highway." (Emphasis supplied.)

Parking off of a roadway is not required in the following areas defined in sec. 340.01, Stats.:

". . .

"(6) 'Business district' means the territory contiguous to a highway when 50 per cent or more of the frontage thereon for a distance of 300 feet or more is occupied by buildings in use for business.

". . .

"(50) 'Residence district' means the territory contiguous to a highway not comprising a business district where the frontage on such highway for a distance of 3000 feet or more is mainly occupied by dwellings or by dwellings and buildings in use for business."

Along Terminal Drive in the vicinity of the accident are some small businesses and bulk storage facilities for various oil companies. These latter operations serve to dispense oil to tanker trucks for delivery to retail distributors, and usually consist of an administration building, loading racks for tanker filling and the huge storage tanks themselves. The administration offices are within 150 feet of the road. The loading racks are near them. As for the storage tanks, they are set back at least 500 feet from Terminal Drive. Most of the oil companies, including Union 76, are on the west side of the road and a chain link fence with "no trespassing" signs runs between the entranceways of each operation. The ad-

ministration buildings of the fuel companies are between 300 to 500 feet apart.

The trial court found that all the structures were being used for business; they were owned by commercial profit enterprises who employed people for their services at these sites. Exhibits demonstrated that the requisite percentage occupancy test for a "business district" was met by the structures.

Appellant's first objection is that the structures involved were not "people buildings" and that the area was obviously closed to the public. The trial court relied on the definition, early pronounced in *La Crosse & Milwaukee Railroad Co. v. Vanderpool* (1860), 11 Wis. 124, 126, of a building as a structure which has a capacity to contain, and is designed for the habitation of man or animals, or the sheltering of property. In a memorandum opinion on motions after verdict, the trial court observed:

"The fact that the petroleum storage tanks are structures with a capacity to contain, designed for the purpose of receiving, retaining, and confining fuel is obvious. In this instance, the Court sees no difference between a storage tank and a warehouse other than its shape and the fact that the former is designed and used for the storage of liquids."

Special, qualified definition would in fact be necessary to exclude these storage tanks from the category of buildings used for business. The fact that access to the area is limited to employees and to those selected distributors who are wholesale customers is not a material distinction. Appellant's proposed interpretation of the statute to limit it to structures capable of human occupancy and utilized for retail distribution is without merit.

A final challenge is based on the jury assessment of ten percent negligence on the part of Zickert. Assuming that the apportionment reflects a belief by the jury that the truck was parked in an improper area when left on

the roadway, the appellant concludes that the statute barring roadway parking, in other than business or residence districts when off-road space is available, must be held to be applicable. Respondents are correct in noting that the jury assessment might be equally attributable to a belief that the vehicle was in a valid parking area but improperly positioned, or that appellant was correct in her case theory that Zickert was in the truck and was backing up when the collision occurred. The assessed negligence of Zickert cannot be ascertained. Yet even if appellant was correct in her assertion that the negligence apportionment reflects that Zickert was at fault in not using available parking in the terminal rather than venturing out on the roadway, as does seem likely on the record, that is no basis for concluding that the statute applied.

Section 346.51, Stats., and its forerunner have been held to be safety statutes, a violation of which is negligence. *Milwaukee & Suburban Transport Corp. v. Royal Transit Co.* (1966), 29 Wis. 2d 620, 624, 139 N. W. 2d 595. It does not follow that a finding of negligence means that a safety statute is applicable. Restatement, 2d, *Torts,* sec. 288c, notes that compliance with a legislative enactment does not prevent a finding of negligence where a reasonable man would take additional precautions. The fact that a statute compelling parking off the roadway was not in force here because of its defined scope certainly did not preclude the jury, who visited the scene, from determining that Zickert was negligent in parking to any extent on the roadway in view of the hour, the availability of alternatives, and his reasons for a stop. Their finding does not impute error in the trial court's ruling.

Both parties requested the court at the outset of the trial to rule as a matter of law on the application of sec. 346.51, Stats. None of the facts concerning the

nature of the area were disputed and the question was one of law, *i.e.*, the meaning of the statutory definition. A ruling as a matter of law was within the power of the trial court. The trial court correctly applied the law to the undisputed facts.

*Duty to stay awake.*

The trial court gave the following instruction, apparently patterned after *Theisen v. Milwaukee Automobile Mutual Insurance Co.* (1962), 18 Wis. 2d 91, 118 N. W. 2d 140, 119 N. W. 2d 393:

"You are instructed that a driver has the duty to stay awake while he drives and it is within his control either to stay awake, to cease driving, or not to drive at all when sleepy.

"If while driving a car one is in such a state of exhaustion that he falls asleep without any premonitory warning, he is chargeable with the knowledge of any ordinarily prudent man that such exhaustion is reasonably likely to cause sleep while driving."

Although there was evidence that would refute that the decedent was tired that evening or that he was asleep at the time of the accident, appellant is in error in stating that there was "absolutely no evidence" warranting this instruction.

In *Aetna Casualty & Surety Co. v. Osborne-McMillan Elevator Co.* (1965), 26 Wis. 2d 292, 305, 132 N. W. 2d 510, appeal after remand, 35 Wis. 2d 517, 151 N. W. 2d 113, certiorari denied (1968), 389 U. S. 1043, 88 Sup. Ct. 786, 19 L. Ed. 2d 834, it was stated:

"Where there is a conflict in the evidence and inconsistent theories on the cause of the event are advanced, we believe instructions encompassing both theories should be given."

Supporting this theory of drowsiness was testimony that the deceased had just opened a new business and had

been working very long periods, fourteen to sixteen hours daily. On the day of the accident he arose at his normal time of about 7:00 a.m. and was at work substantially all day until his departure at 10:00 p.m. His wife visited him there for lunch, and he told her he was planning to complete a large project he had been working on for the last few days and then would come home. During his breaks that evening he consumed some alcoholic beverages with an employee. Additionally, the jury could accept the testimony of various co-workers of Zickert that the truck's lights and flashers were lit at the time of the collision and they could conclude from other evidence that it could be observed from a distance of 1000 feet. The appellant's reconstruction expert admitted that at the time of the collision at least fifteen feet of roadway was open to the left of the truck and it did not rest on the center line. No skid marks were observed by the investigating officers and no breaking sound was heard.

Appellant's challenge to the instruction also indicates a belief that the instruction is improper unless testimony of an actual observation of sleep is produced. This is not so. *Theisen, supra,* and *Newberger v. Pokrass* (1967), 33 Wis. 2d 569, 148 N. W. 2d 80, exemplify that the issue may be raised by permissible inference of the evidence without a direct observation.

### Under influence of intoxicants.

Wisconsin J I—Civil, 1035, captioned "Drinking by Driver or Guest: Relation to Negligence," was given to the jury. Two witnesses testified that the deceased had consumed a martini at about 5:30 p.m. and had consumed a little more than two cans of beer a few hours later. Police officers at the scene testified that they detected the odor of intoxicants on Billingsley.

The instruction given generally admonishes that the jury is not to consider the drinking of intoxicants in assessing negligence unless it determines that the items consumed affected the driver to the extent that his ability to exercise ordinary care was impaired to an appreciable degree. Appellant does not claim that the instruction was inappropriate, but sees error in the failure to additionally instruct on sec. 885.235 (1) (a), Stats.:

"(1) In any action or proceeding in which it is material to prove that a person was under the influence of an intoxicant when operating or driving a motor vehicle, . . . evidence of the amount of alcohol in such person's blood at the time in question as shown by chemical analysis of his breath, blood or urine is admissible . . . Such chemical analysis shall be given effect as follows without requiring any expert testimony as to its effect:

"(a) The fact that the analysis shows that there was five-hundredths of one per cent or less by weight of alcohol in the person's blood is prima facie evidence that he was not under the influence of an intoxicant;

". . ."

The appellant's claim of error has no merit. An appropriate instruction was neither included in the written proposed instructions of the plaintiff nor orally requested at any point of record after the court had informed the appellant that a drinking instruction would be given. Failure to request waives the right to an instruction, *Schafer v. Time Ins. Co.* (1966), 32 Wis. 2d 694, 700, 146 N. W. 2d 413, and the absence cannot be raised as error on an appeal, *Van Wie v. Hill* (1961), 15 Wis. 2d 98, 105, 106, 112 N. W. 2d 168. Additionally, the statute and instruction are directed only to objective measuring devices timely employed to sample the actual alcoholic level in the body, and do not embrace the opinion of the expert who testified here, who must hypothetically "reconstruct" the individual's consumption and dissipation rate.

The respondents did not, at any time, contend that Billingsley was intoxicated. It was their contention that the alcohol which Billingsley consumed, coupled with the extended hours that he had been working, could have created a condition of drowsiness which affected his ability to exercise due care in the operation of his vehicle.

We find no error in the trial court's instruction under the circumstances. Both parties could argue the weight to be afforded this consumption and other factors, citing matters within the common knowledge of the jury and aspects of the occurrence testimonially adduced.

*New trial.*

Appellant requests a new trial. In *Benzschawel v. Stoll* (1974), 64 Wis. 2d 211, 214, 215, 218 N. W. 2d 748, this court repeated:

"The test of granting a new trial in the interests of justice is whether this court is convinced that there was a probable miscarriage of justice. In viewing the case as a whole, this court must be convinced to a reasonable certitude that if there were a new trial it would probably effect a different result. *Lock v. State* (1966), 31 Wis. 2d 110, 142 N. W. 2d 183; *Bohlman v. American Family Mut. Ins. Co.* (1974), 61 Wis. 2d 718, 214 N. W. 2d 52; *Savina v. Wisconsin Gas Co.* (1967), 36 Wis. 2d 694, 154 N. W. 2d 237. And, this does not mean that this court might think if a different jury would have decided the case, a different result would have been effected. The grounds asserted for a new trial here, if eliminated in a new trial, must have the reasonable probability of effecting a different result."

We think the grounds are insufficient.

*Costs under sec. 271.04 (2), Stats.*

The respondents seek a review of that part of the judgment which refused to allow them recovery of certain costs. Numerous photographs and two plats were

used by them in presenting their case, for a total expense of $551.80. Recovery of disbursements is governed by sec. 271.04 (2), Stats.:

"(2) DISBURSEMENTS. All the necessary disbursements and fees of officers allowed by law; the suit tax; the compensation of referees; a reasonable disbursement for the service of process or other papers in an action when the same are served by a person authorized by law other than an officer, but in no event shall such item exceed the authorized sheriff's fee for the same service; amounts actually paid out for certified copies of papers and records in any public office; postage, telegraphing, telephoning and express; adverse examinations including copies; *plats and photographs, not exceeding $50 for each such item;* an expert witness fee of $25 for each expert who testifies, exclusive of the standard witness fee and mileage which shall also be taxed for each such expert; and in actions relating to or affecting the title to lands, the cost of procuring an abstract of title to such lands. Guardian ad litem fees shall not be taxed as a cost or disbursement." (Emphasis supplied.)

Reading the $50 limit as applicable to each category, the trial court refused to allow recovery for such disbursements beyond a total of $100.

In light of the emphasis on "each such item" the statute rather appears to allow recovery of the cost, not exceeding $50 per item, of each individual plat or photograph. The trial court indicated apprehension that this interpretation would allow a party to "run up" costs. Since the proponents of an exhibit are aware that its cost will have to be borne by themselves if their case is unsuccessful, self-restraint is induced. Exhibits are for jury illumination and the statute expressly allows cost recovery for each item.

Other issues raised by the appellant and respondents need not be reached because of our ruling on the questions involving liability.

*By the Court.*—Judgment is modified to increase the amount allowed for plats and photographs to $551.80 and, as modified, affirmed.